Ruffin, Judge.
 

 — This case depends upon the just construction of the act of 1799,
 
 (Rev. ch.
 
 322.) It is contended, for the- Appellants, that the decree is erroneous, because the words of the act confine its operation to the single case, where there are bastard children of a mother, leaving no children bom in lawful wedlock ; or afc any rate, that no construction can carry it further, than to let in bastards alone to descents from bastareis. Certainly the claim of the University mast prevail, unless Intercepted by n fair construction from the statute — since at common law, there Is no collateral descent to or from a bastard.
 

 It is to be premised however, that even a refinement would he allowable, that led to an heir, and prevented property from being derelict. Our law leans against escheats. Half-blood has been admitted, although there Le nota drop of the first purchaser’s mingled with it.— Famits inherit from children j widows from husbands $ bastards from mothers, and from each other.
 

 Two cases are expressly embraced in the act: the one descents from the mother, the other descents frota the bastards themselves. As to the former, there can be
 
 ma
 
 doubt, that the bastard cannot inherit, if the mother leave a legitimate child. The words are, where the mother “leaving no children bora in lawful wedlock,” her estate shall descend to her illegitimate children. The capacity of the bastard to inherit
 
 from Ms mother
 
 is, there,fore, expressly limited to the single case of the mother’s leaving no issue but bastards. >Yc can be at no
 
 *348
 
 ]0ss for the reason of this provision. The restriction grew out of the same policy, which at common law ex-cju(je(j bastards altogether, namely, an earnest and anx-jous (]esire to uphold and encourage the great social compact, marriage. To enforce that policy, our ancestors imposed the rigorous penalty of an escheat, rather than admit a bastard to the succession. Our Legislature has yielded something to natural affection, but not so much as to impair the value to the parties, or the public, of that important relation. Bastards are admitted, when there is no legitimate child ; because it is of common interest, that all children should have a competent maintenance of parental provision ; and because there seems a natural right in the child to the fruits of the parents labours, unless for better ends they can be bestowed on others, deemed more worthy. It is still an object, not altogether unattainable, to reform the mother, and fit her for the duties of a mother and guardian of her un-liappy and degraded offspring. If any thing lias that tendency, it is marriage. The more prudent, the greater will be the probability of those happy results. To encourage the marriage, and prudent marriage of the mother, and thereby promote the real good of the illegitimate issue themselves, the statute holds out this inducement to a husband, that
 
 Ms
 
 children shall succeed to the
 
 whole
 
 of their mother’s estate, in exclusion of others.— This part of the act does riot directly affect the present question ; but it has a materal bearing upon it, since it exhibits a decided preference, founded on the clearest and soundest reasons, which have a strong application to the other parts of the act, and enable us the better to discover its spirit. The words ought to be very positive, which should exclude the legitimate altogether from succeeding to bastard children, when we find the same act admitting them alone, in exclusion of the bastards, to inherit from tiie mother.
 

 
 *349
 
 We come now however to consider th« act itself, in reference to a descent from a bastard. The provision is, “if any such i ilegitímate child shall die mt( state, ■without leaving a child, his estate shall descend to, and be equally divided among his brethren ami sisters, bora of the body of the same mother ami their representatives, in the same manner as if they had been bora in lawful wedlock.” If there be none but bastards, unquestionably they succeed to each other. But if the intestate have two sets of brethren, one legitimate and the other illegi-mate, then, it is contended, neither succeeds, or the bastards only ; and if he leave legitimate brethren only, that they are excluded.
 

 The point is not entirely new. It was decided in a case where there were two lines, by the late Supreme Court.
 
 (Arrington
 
 v.
 
 Alston,
 
 N.
 
 C. Term Rep.
 
 310.)— The descent was held to be to both equally. But as the question was not much debated there, the Court is willing to reconsider it.
 

 The general scope of the act is, to prevent an escheat in a case vv here it existed before, namely, upon the death of a bastard intestate, and without lineal heirs; and to provide for bastard brethren. But it is argued, that the descent between illegitimate brothers and sisters themselves is tied up to the case, where there are none but illegitimates. This is founded upon the words “ any such,” as referring to the illegitimate children spoken of in the previous sentence, that is to say, bastards of a mother, leaving no legitimate child. It must be admitted, that the clause is badly penned. But it may be construed without giving the restrictive and particular meaning to those words or relatives, which shall confine them to the happening of the whole case, provided for in the previous clause. “ Such” need not be referred at all
 
 to tlie
 
 mother. The act does not mean, the bastard children of
 
 “such”
 
 mother, that is, one leaving illegitimate and no legitimate children — hut only “such” or “any”
 
 *350
 
 illegitimate person. It is the same as if the sentence had been written, “ if
 
 any
 
 illegitimate child shall die,’5 &c. It is but common respect to the Legislature to put SIlc|j a construction upon the act. Upon what conceivable reason, shall the existence of a brother born in wedlock defeat the descent from a bastard to another bastard brother? A motive of policy might, indeed, have induced the Legislature to make the legitimate sole heir to the intestate bastard. But they have not thought proper so to order, and it is to be remembered, that this objection cuts off both the lines, upon the ground that the existence of two lines is a
 
 casus omissus
 
 in the act, and remains as at common Jaw. I cannot think so. If tiiere be none but bastards, the act expressly makes them inherit to each other. Shall that succession be defeated by any other means than a preferable heir ? Why should it ? Good sense says, that the rigid of a bastard to inherit from a bastard brother shall not be destroyed
 
 by
 
 the existence of a legitimate brother,
 
 unless the latter can himself inherit.
 
 If the latter cannot inherit, it is the ' same as if he were not in being. This was the ground taken by the Court, in construing the sixth canon of descents in
 
 Bell v. Dozier. (Ante
 
 1
 
 vol.
 
 333.) In that case it was held, that the mother had an estate for life in land, derived by her son by descent from his father, though the son left a brother, who, being of the maternal half blood, could not inherit, because there were also paternal uncles and aunts. The mother inherits against {he words of the canon, because the intention was to postpone her,
 
 only in favor
 
 of brothers and sisters $ and if they cannot take, she shall.
 

 If then bastard brothers may inherit to each other, notwithstanding the existence of legitimate brothers, may not the legitimate brothers in such case succeed as coheirs ? The opinion of the Court is, that they do. It seems to follow necessarily from the act, if the positions already taken be true. For if the act in its true mean
 
 *351
 
 ing is not confined to the case where there are none but bastards, and illegitimates may be heirs to each other, though there be legitimates, the latter must be also heirs, Wherever one can inherit, the other must. The words are, “he divided among his brothers and sisters
 
 born of the body of the same mother.”
 
 It.is true, the object of the Legislature is disclosed in the title to be, to provide for bastard children. But that will not restrain the enacting words. They are broad enough to cover all the brethren of both kinds, arid there is nothing in the context or reason to limit their sense. It is manifest, that the moral and political considerations which exclude bastards from the succession to the mother, when there is legitimate issue, have no force to exclude the legitimate from the succession to a bastard brother. They powerfully apply indeed, when a bastard shall claim to succeed to a legitimate brother. Accordingly, we find nothing of that sort in the act. There Is no provision for a descent from a legitimate to a bastard. The descent from bastards alone is within the purview. Hence bastards can never inherit but from the mother and from each other» But the reasons, on which the legitimates are constituted sole heirs of the mother, alike require, that they should be co-heirs of the bastards, if the Legislature had not thought so, but had intended to confine the descent from bastards to bastards abac, how easy would it have been to say, the estate descend “ to ail his
 
 illegitimate
 
 brothers and sisters, born of the body of the same mother.” Instead of that, they say it shall descend to all his maternal brothers and sisters.
 

 It follows, that the brethren horn in wedlock succeed to a bastard brother in like manner, when that line exists by itself, and there is no sunning bastard brother or sister.
 

 The act is limited to descents between the brethren. It does not let the parents in at all. The decree was consequently right in excluding the mother.
 

 
 *352
 
 The decree is therefore affirmed, wilh costs in this Court to be paid by the Appellants. And as the whole case is not here, because the University alone appeared, this decree must be certified to the Superior Court of Orange, with instructions to proceed in the execution of the decree of that Court, as between the other parties.
 

 Per Curiam.
 

 — Let the decree be affirmed.