P. D. McBRYDE and others v. JOHN PATTERSON and others.

*Canons of Descent--Rule XI--Illegitimate Child--Practice--Appeal.*

1. Upon the death of an illegitimate child, (intestate, unmarried and without issue) leaving brothers and sisters born of the same mother, some legitimate and others illegitimate, his real estate (under Bat. Rev. ch. 36, Rule 11,) descends to his brothers and sisters alike as heirs-at-law in equal parts.

2. No appeal lies from the refusal of the Court below to grant a motion to dismiss the action.

(*Flintham* v. *Holder*, 1 Dev. Eq. 345 ; *Arrington* v. *Alston*, Term Rep. 310 ; *Sawyer* v. *Sawyer*, 6 Ire. 407 ; *Ehringhaus* v. *Cartwright*, 8 Ire. 39; *Mitchell* v. *Kilburn*, 74 N. C. 483, cited and approved.)

SPECIAL PROCEEDING for Partition of Land commenced in the Probate Court, and heard on appeal at Fall Term, 1877, of ROBESON Superior Court, before *Moore, J.*

The facts sufficiently appear in the opinion of this Court delivered by THE CHIEF JUSTICE. The defendant, John Patterson, moved to dismiss the proceeding upon the ground that he was sold' seized of the land. Motion denied. Appeal by defendant.

*Messrs. Merrimon, Fuller & Ashe,* for plaintiffs.
*Messrs. Giles Leitch* and *A. Rowland,* for defendant.

SMITH, C. J.   The land to procure partition of which this proceeding was instituted, belonged to one Robert Hughes, who acquired it by purchase and died intestate, unmarried and without issue.   He left surviving him a brother, William Gordon, and four sisters, Sarah, Effie, Isabella and Caroline.   The intestate himself and Caroline were illegitimate, and William and the three other sisters, legitimate children, born of the same mother.   The shares of those born in wedlock are claimed, some of them by the plaintiff, the others

by some of the defendants, and the share and estate of Caroline belong to the defendant John Patterson, the parties in interest and before the Court.

Controversies having sprung up during the progress of the cause in respect to the ownership of some of the shares, successive amendments of the pleadings have been allowed, and new parties introduced to adjust and conclude the conflicting claims thereto among the defendants.

The cause was brought to a hearing before the Probate Judge on the 27th day of June, 1873, and he on motion dismissed the proceedings, and the plaintiff appealed.

At Fall Term, 1877, the appeal came on to be heard before *Moore, J.,* upon the motion to dismiss on the ground that the entire estate, under rule 11 of the canons, descended at the intestate's death to his illegitimate sister, Caroline, who thereby became sole seized of the land, and the same has been conveyed to the defendant John Patterson. The motion to dismiss was denied, and the Court declared that at the intestate's death, his land descended to his brother and all his sisters, legitimate as well as illegitimate, as heirs at law in equal parts, and that the sole seizin thereof was not in the defendant John Patterson, and the Court adjudged the plaintiffs to be entitled to partition of the land. From this judgment the defendant John Patterson appealed.

The 11th rule of descent upon the true construction of which the case depends, is in these words: "Illegitimate children shall be considered legitimate as between themselves and their representatives, and their estates shall descend accordingly in the same manner as if they had been born in wedlock. And in case of the death of any such child or his issue, without leaving issue, his estate shall descend to such person as would inherit if all such children had been born in wedlock. Provided always, that when any illegitimate child shall die without issue, his inheritance shall vest in the mother in the same manner as

is provided in rule 6 of this chapter, Bat. Rev. ch. 36, Rule 11. This statute, the proper construction of which determines the rights of the parties in the case before us, in its general scope and terms, is very similar to the Act of 1799, ch. 522, upon which an interpretation was put in the case of *Flintham* v. *Holder*, 1 Dev. Eq. 345. This Act was as follows; "That when any woman shall die intestate leaving children commonly called illegitimate or natural born out of wedlock, and no children born in lawful wedlock, all such estate whereof she shall die seized or possessed of, whether real or personal, shall descend to and be equally divided among such illegitimate or natural born children, and their representatives in the same manner as if they had been born in wedlock; and if any such illegitimate or natural born child shall die intestate without leaving any child or children, his or her estate, as well real as personal, shall descend to and be equally divided among his or her brothers and sisters born of the body of the same mother, and their representatives, in the same manner and under the same regulations and restrictions, as if they had been born in lawful wedlock; any law, usage or custom to the contrary not withstanding. James Flintham, an illegitimate son of Ailsey Flintham, died intestate leaving no widow, child or other issue, and possessed of a considerable personal estate, which went into the hands of Thomas Holder, his administrator. The intestate had a brother and two sisters who were born in lawful wedlock of the same mother.

Ruffin, J., in delivering the opinion of the Court, quotes the statutes and proceeds thus: "If there be none but bastards, unquestionably they succeed to each other, but if the intestate have two sets of brethren, one legitimate and the other illegitimate, then it is contended, neither succeeds, or the bastard only, and if he leave legitimate brethren only, that they are excluded. The point is not entirely new. It was decided in a case where there were two lines,

by the late Supreme Court. (*Arrington* v. *Alston*, Term Rep, 310.) The descent was held to be to both equally, but as the question was not much debated there, the Court is willing to reconsider it."

He then proceeds to criticise the words of the Act, and its purposes and policy, and says: "If then bastard brothers may inherit to each other, notwithstanding the existence of legitimate brothers, may not the legitimate brothers in such case succeed as co-heirs? The opinion of the Court is that they do. It seems to follow necessarily from the Act, if the positions already taken be true; for if the Act in its true meaning is not confined to the case when there are none but bastards, and illegitimates may be heirs to each other, though there be legitimates, the latter must also be heirs." And again he continues: "There is no provision or a descent from a legitimate to a bastard. The descent rom bastards is alone within the provision. Hence bastards can never inherit but from the mother and each other. But the reasons on which the legitimates are constituted sole heirs of the mother, alike require, that they should be co-heirs of the bastards.    *    *    *.

It follows that the brethren born in wedlock succeed to a bastard brother in like manner when that line exists by itself, and there is no surviving bastard brother or sister."

We have quoted largely from the opinion as to the proper construction of the Act as it was passed in 1799, because the reasoning of the Court applies with undiminished force to the law with the modifications it has since undergone, and as it now appears among the rules of descent, in the aspect we are now considering it. It can scarcely be supposed that the subsequent changes in phraseology, more than in matter, were intended to subvert a construction so long acquiesced in, and so just and reasonable in itself, and thus an Act professing to remove in certain cases the disabilities of bastardy, should be made to confer upon bastards, rights and privileges in respect to inheriting, superior to

those possessed by persons born in wedlock. We think the purpose of the Act and its true meaning to be, the removal of those disabilities so that in such case bastards may participate equally with those born in wedlock.

We do not think that the cases to which our attention has been called impair the force or authority of the decision in *Flintham* v. *Holder.* In *Sawyer* v. *Sawyer*, 6 Ire. 407, it is held that land devised by a grand-mother to the illegitimate child of a legitimate daughter of the testatrix, did not descend upon the death of the devisee intestate and without issue, to a legitimate son of the testatrix, who was brother of the intestate's mother.. And in *Ehringhaus* v. *Cartwright*, 8 Ire. 39, the Court decide that while an illegitimate brother can inherit from his illegitimate sister of the same mother, he cannot inherit from a legitimate daughter of the sister. This decision following the other is worded in the form of the present law, by adding after the words, "and in case of the death of any such child," the words, "or his issue," which were not in the Act when the case was decided in 1846. So that now an illegitimate brother or sister can inherit lands descended from the issue of an illegitimate brother or sister, as well as from such brother or sister.

We have discussed and expressed our opinion upon the question involved in the defendants' motion to dismiss, and which we suppose it is the wish of the parties should be decided in this Court. But there is another fatal obstacle in the defendants' way, in that, he appeals from a refusal of the Judge on his motion to dismiss the action. This we have said is not a judgment from which an appeal will lie. *Mitchell* v. *Kilburn*, 74 N. C. 483.

The appeal must therefore be dismissed, and the parties left to proceed with the cause in the Court below. There is no error, and this will be certified, &c.

No error.

Per Curiam.                                    Judgment affirmed.