BETTIS v. AVERY.

(Filed December 5, 1905).

*Descent and Distribution—Statutes—Slaves — Marriage — Illegitimates—Ejectment—Title.*

1. The Act of 1866, chap. 40 (Code, sec. 1842 of The Code), fixed the marital relations of former slaves, who were living together as man and wife, providing that those who thus cohabitated at the date of the ratification of the act should be deemed to have lawfully married, with a provision for acknowledgment before the clerk or justice of the peace.

2. The Act of 1879, chap. 73 (Code, sec. 1281, Rule 13), legitimates the plaintiff, the child of colored parents, who was born before the first day of January, 1868, and merely extended the child's right of inheritance to the estate of the father, which was before that restricted to the estate of the mother, but it does not transmit any title to the plaintiff, who is claiming the land in dispute as heir of an illegitimate first cousin.

3. The plaintiff, who is a legitimate and is claiming under a collateral kinsman of her mother, is excluded from any benefit under Rule 9 of section 1281 of The Code, which refers only to a lineal descendant from a mother to her illegitimate child and its descendants and not to any collateral descendant from her kindred to the child as her representative.

4. The last clause of Rule 9, section 1281 of The Code, excludes the right to inherit, as the representative of an illegitimate mother, any part of the estate of the latter's kindred, either lineal or collateral.

5. The plaintiff, a legitimate, who does not claim directly from a brother or sister, or from the issue or heirs of either, but from an illegitimate first cousin, comes within neither the letter nor the reason of Rule 10 of section 1281 of The Code.

6. In an action of ejectment, it makes no difference whether the defendant has any title or not, for the plaintiff can succeed only on the strength of his own title as being good against the world or good against the defendant by estoppel.

ACTION by Clara Bettis against Wash Avery and others, heard by *Judge W. R. Allen,* upon a case agreed, at the August Term, 1905, of the Superior Court of BURKE.

The plaintiff brought this action to recover the tract of land containing 21½ acres described in the pleadings, and it was heard upon the following case agreed: 1. Matilda Greenlee, who died before 1861, was the mother of Adam Bettis and Clarissa Greenlee. 2. Clarissa Greenlee was the mother of Austin Greenlee. 3. Adam Bettis was the father of the plaintiff, Clara Bettis. 4. Matilda Greenlee, Adam Bettis, Clarissa Greenlee and Austin Greenlee were slaves. 5. Clarissa Greenlee died about twenty years ago, Austin died afterwards, about seventeen years ago, and Adam Bettis died a year or two before Austin. 6. Adam Bettis and his wife were married during slavery and lived together as man and wife before emancipation and, afterwards, until the date of the death of one of them, which was sometime after the year 1866, their child (the plaintiff Clara) having been born prior to the first day of January, 1868. 7. Austin Greenlee was the owner of the land in dispute, having acquired title by deed, dated March 25, 1878. He died seized and possessed of the land in fee simple. 8. Austin Greenlee married Laura Greenlee, who died after the death of her husband, leaving a daughter by another marriage, named Malinda, who married Wash Avery. They are the defendants in this case. 9. Austin Greenlee died intestate in Burke County without ever having had any children. 10. Laura, the

widow of Austin Greenlee, lived on the land in dispute after the death of the said Austin and until within a year prior to the beginning of this action, which was commenced July 31, 1903.

The court was of opinion that upon the said facts the plaintiff is the owner of the land, and rendered judgment in her favor, from which the defendant appealed.

*F. H. Busbee & Son* for the plaintiff.
*S. J. Ervin* for the defendant.

WALKER, J., after stating the case: The plaintiff's right to recover in this action depends upon the true meaning of our statute of descents in regard to former slaves and illegitimates, and their rights of property and inheritance growing out of their peculiar status. It seems to us that by a reasonable construction of our statute, whether it is based upon the letter or the evident intention of the Legislature, the plaintiff's claim to the land in dispute must fail. She would not have the shadow of a title, if the case were decided according to the principles of the common law. But our statute has superseded those principles, and her right, if any she has, must rest solely on some provision of the statute. The Legislature took early action after the war to fix the marital relations of former slaves, who were living together as man and wife, by passing the Act of 1866, chapter 40, section 5; and providing that those who thus cohabited at the date of the ratification of the act should be deemed to have been lawfully married as man and wife, with the provision for acknowledgment before the clerk or a justice of the peace and for making a record of the fact. This act was construed and held to be valid in *Long v. Barnes,* 87 N. C., 329; *State v. Adams,* 65 N. C., 537, and *State v. Whitford,* 86 N. C., 636. The act was upheld as constitutional, the necessary consent thereto being supplied by continuing cohabita-

tion, and the provision as to acknowledgment was considered to be directory, so that a failure to comply with it, though a misdemeanor, did not affect the validity of the marriage. This statute is not material in this case, except in so far as it establishes the legitimacy of the plaintiff. There are no facts stated which would cause it to change the status of Adam Bettis and Clarissa Greenlee as illegitimates, for their mother, Matilda Greenlee, died in 1861, a slave; nor are there any to show the legitimacy of Austin Greenlee, who was born in slavery of a slave mother, Clarissa Greenlee. The Act of 1866 (Code, sec. 1842), was followed by the Act of 1879, chapter 73 (Code, sec. 1281, Rule 13), which provided that "the children of colored parents born at any time before the first day of January, 1868, of persons living together as man and wife are hereby declared legitimate children of such parents or either one of them, with all the rights of heirs at law and next of kin, with respect to the estate or estates of any such parents, or either one of them." This act merely legitimates the plaintiff as the child of Adam Bettis and his slave wife, which, perhaps, was already done by the Act of 1866, but it cannot be held to transmit any title to the land in dispute from Austin Greenlee to her, as it refers exclusively to the descent to such a child of the "estate or estates of its parents, or either one of them," and merely extended the child's right of inheritance to the estate of the father, which before that was restricted to the estate of the mother. In this case, the plaintiff is not claiming the land as the heir of her father or of her mother, but as heir of an illegitimate first cousin. That provision of the law, therefore, does not apply. *Tucker v. Bellamy,* 98 N. C., 31; *Jones v. Hoggard,* 108 N. C., 178. These two special statutes may, therefore, be laid out of the case, and the plaintiff having no right at common law is driven to claim under the statute of descents, applicable to illegitimates generally. It is true that she is a legitimate, but she is claiming collaterally

from an illegitimate who is not her brother, they being the children respectively of an illegitimate brother and an illegitimate sister. Her case must then be brought within the provisions of either Rule 9 or Rule 10 of chapter 28 of The Code. The first of those rules is as follows: "When there shall be no legitimate issue, every illegitimate child of the mother and the descendant of any such child deceased, shall be considered an heir, and as such shall inherit her estate; but such child or descendant shall not be allowed to claim, as representing such mother, any part of the estate of her kindred, either lineal or collateral."

It is apparent that the rule just quoted refers only to a lineal descent from a mother to her illegitimate child and its descendants, and not to any collateral descent from her kindred to the child as her representative. These are the very words of the act, and the language is too clear and unmistakable for any reasonable doubt as to what is meant. Again, we say, bringing our case to the test of this rule, the plaintiff is not claiming as the illegitimate child of her mother, because, first, she is a legitimate, and, second, she is claiming under a collateral kinsman of her mother. So that, in every possible view, she is excluded from any benefit under that rule. *Flintham v. Holder,* 16 N. C., 345; *McBryde v. Patterson,* 78 N. C., 415; *Sawyer v. Sawyer,* 28 N. C., 407. If the plaintiff traces her right to inherit from Austin Greenlee back through her illegitimate father (Adam Bettis) to her grandmother (Matilda Greenlee) and then down from her through her illegitimate daughter (Clarissa Greenlee) to Austin Greenlee, the son of Clarissa, she is equally unfortunate, as such an inheritance is positively forbidden by the last clause of Rule 9, which excludes the right to inherit, as the representative of an illegitimate mother, any part of the estate of the latter's kindred, either lineal or collateral, and the right cannot, therefore, be traced beyond the mother, nor through the latter's lineal or collateral kindred. The law

breaks the connection at the mother in the ascending line, when it is necessary to pursue that in order to reach the *propositus,* and expressly prohibits any direct lineal or collateral descent but that mentioned in the first clause, namely, from the mother herself to the illegitimate child or the descendant of any such child deceased, and the descent provided for in Rule 10 as between illegitimates themselves and from them or their issue, as therein specially provided. Nor do we think that under Rule 10 the claim of the plaintiff is rendered any better. She comes within neither its letter nor its reason, and certainly not within the former. This canon declares that "illegitimate children shall be considered legitimate as between themselves and their representatives, and their estates shall descend accordingly in the same manner as if they had been born in wedlock. And in case of the death of any such child or his issue, without leaving issue, his estate shall descend to such person as would inherit if all such children had been born in wedlock; provided, that when any legitimate child shall die without issue his inheritance shall vest in the mother in the same manner as provided in Rule 6 of this chapter. Code, chap. 28, sec. 1281. The illegitimates mentioned in the rule are those who are the children of the same mother, and they inherit as between themselves and their representatives, as if they were legitimate. We have no such case as this presented in the record. The plaintiff is not a sister of Austin Greenlee and therefore has not the same mother, but they are first cousins, being the descendants respectively of a brother and a sister. The second branch of the rule also refers to a descent as between brothers and sisters, and utterly excludes the idea that such a descent, as that the plaintiff now claims, was ever contemplated. The proviso to Rule 10 cannot of course affect the question involved herein. The plaintiff could not derive any title from Austin Greenlee through his mother, even if she had been living at his death, so as to take from him under

the proviso, when considered in connection with the proviso to Rule 6.

The plaintiff's counsel, however, strenuously insisted before us that it being admitted Adam Bettis, though illegitimate, was collaterally related to Austin Greenlee, also illegitimate, and there being no other nearer claimant than Malinda Avery, the stepchild of Austin Greenlee, or the child of his deceased widow, if Adam had been white and had survived Austin, he would have been his heir under Rule 10 of the Canons of Descent, giving to illegitimates the rights. of legitimates as between themselves and their legal representatives, and the plaintiff consequently would inherit as heir of her deceased father. This was his principal contention, and in support of it he relied upon *Tucker v. Tucker,* 108 N. C., 238. A full and sufficient answer to the argument is that Rule 10 applies, by its very terms, to illegitimate children and is intended to affect only inheritances as between them and their representatives. This is clear from the words in the first part of the rule, "illegitimate children shall be legitimate as between themselves," and their estates shall descend "accordingly," and also from those we find in the latter part, when reference is being made to the death of any such illegitimate child or his issue, without leaving issue, and the descent of his estate to such person as would inherit namely, "if all such children had been born in wedlock," the said words evidently describing the children as a class who would inherit from each other, with the qualification as to the "issue" of such a child or the "representatives" of such children. The case of *Tucker v. Tucker,* instead of sustaining the contention of plaintiff's counsel, seems to us to be directly the other way. In that case the court decided that the Act of 1879 (Code, sec. 1281, Rule 13), provided for the inheritance of an illegitimate child from both parents instead of, as formerly, from its mother "and not collaterally," and then says: "Prior to that act, such children had

only the rights of other illegitimates, and, by section 1281, Rules 9 and 10, could only inherit from their mother, when there was no legitimate child, and from one another." And again it says: "By virtue of emancipation and the Constitution, the plaintiff has the same rights as any other illegitimates, and, under Rule 10, can succeed to the estate of his illegitimate brother."

In no view that we can take of the facts and the law, can the plaintiff recover. She cannot claim under the Act of 1866, and she does not present any facts which entitle her to claim under Rule 13, as she does not assert title derived directly from either of her parents. She can then only rely on Rule 9 or Rule 10. The reason just given why she cannot claim under Rule 13 applies with equal force to any claim under Rule 9, and, besides, she is not an illegitimate child, but has been made legitimate by the Acts of 1866 and 1879. As to Rule 10, she does not claim directly from a brother or sister, or from the issue or heirs of either, but from an illegitimate first cousin. *Sawyer v. Sawyer,* 28 N. C., at pp. 408, 409. It is well argued in the brief of the defendant's counsel that in *Tucker v. Bellamy,* 98 N. C., 31, it was decided there is no statute which enables a niece to inherit from a deceased aunt, who was a slave, and if that is so, how can a niece inherit from a descendant of such an aunt, unless there is some express provision to that effect. This is the plaintiff's case. It is true we should so construe these acts as to prevent an escheat, which is not favored by our system of laws and as it was the purpose to do so in passing them, but we must still give them a reasonable construction and decide according to their true meaning, regardless of the consequences. Besides, the defendant says there will be no escheat, as she is entitled to the land under Rule 8, being a child of the widow of the *propositus,* Austin Greenlee. We do not say how this is, as it is sufficient to hold that the plaintiff cannot recover. It makes no difference whether the defend-

ant has any title or not, for the plaintiff can succeed only on the strength of her own title as being good against the world or good against the defendant by estoppel. *Campbell v. Everhart,* at this term.

It may be that the plaintiff's claim should appeal most strongly to our sense of what is just and fair and also to our sympathy. If this be true, and we do not say that it is, as we cannot pass upon such matters, the law has declared against her, and what the law declares must stand for all that is right without question by us.

The court erred in its judgment, which is reversed, and the case is remanded with direction to enter a judgment, upon the facts agreed, for the defendant.

Reversed.