### EMILY BERRY v. D. W. POWELL ET AL.

#### Decided November 23, 1907.

**Descent and Distribution—Bastard—Statute Construed.**

Under article 1700, Revised Statutes of Texas, an illegitimate sister can inherit from an illegitimate brother, both being of the same mother.

Appeal from the District Court of Harrison County. Tried below before Hon. Richard B. Levy.

*T. P. Young* and *Albert W. Webb,* for appellant.

*S. P. Jones,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—On January 26, 1905, appellee D. W. Powell filed in the District Court of Harrison County, Texas, his original petition, wherein he sought judgment against Charles W. Staples, defendant, on certain vendor lien notes described in said petition, and also a foreclosure of his vendor's lien upon the land in controversy. Charles W. Staples answered, alleging a breach of warranty of title and setting up title to one-half the land in Emily Berry, of Orange County, North Carolina. On May 9, 1905, Emily Berry filed her original answer in which she claims title against both Powell and Staples to one-half of the land, and asks appropriate relief. Subsequently Charles W. Staples died, and his heirs were made parties and guardian *ad litem* appointed for the minors.

Plaintiff, by appropriate pleadings and averments, asks as against the heirs of Staples, to wit: A rescission of the sale, made by himself to Staples, and a cancellation of the warranty deed executed by him to Charles Staples, and offers to surrender the purchase-money note for cancellation. As against Emily Berry he asks judgment for the land and costs. The minor heirs of Charles Staples allege breach of contract, failure of title, and ask abatement of purchase money to the extent of one-half, and for appropriate relief. The adult heirs of Staples failed to answer. Emily Berry, by appropriate pleadings, avers ownership in herself in one-half of the lands in controversy, brings her action in form of trespass to try title and for partition, as against Powell, the heirs of Staples and John B. Tullis, and as against all of them asks for a partition of the estate of James McCulloch, the common source of title of all claimants to the land. Plaintiff Powell also, by appropriate pleadings and prayer, asks a partition of the estate of James McCulloch, and that the land in controversy be set aside to him, and that Emily Berry be compensated for her interest in same, if any, out

of the other lands belonging to the estate of James McCulloch, averring that there is ample left to compensate her. John B. Tullis files a disclaimer as to the particular lands in controversy, but not as to the estate of James McCulloch.

The following facts were shown upon trial: The property in controversy was purchased by James McCulloch April 13, 1888, for cash. James McCulloch married M. J. Tullis on November 13, 1888. James McCulloch died intestate in Harrison County, Texas, in 1899, and left surviving him M. J. McCulloch, his wife, who died in 1904. James McCulloch left no children nor descendants of any, nor father nor mother, nor descendants of either, except Emily Berry, who was his illegitimate sister. M. J. McCulloch left as her heir John B. Tullis, her only child, the issue of her former marriage. On January 1, 1903, M. J. McCulloch and John B. Tullis and wife sold the land in controversy to D. W. Powell for cash, and on February 1, 1903, D. W. Powell sold same to Charles Staples for $400 and three notes, aggregating $1,900, vendor's lien retained in deed and notes. Staples defaulted in 1904, and Powell sued for foreclosure. Staples died in 1906, and his heirs were made parties, and by amendment Powell sought to rescind. The heirs pleaded outstanding title to one-half in Emily Berry, and asked to rescind and compensation for improvements, and plead and proved payment of $800 of the purchase money; the balance due on the notes at the time of the trial was $2,500, which amount the heirs of Charles Staples refuse to pay or to pay any part thereof. Charles Staples at his death left no wife surviving him, but left children by his last wife as follows: Survilla Staples, Addie Staples, Elpe Staples, Alice Staples, Alberta Staples, all minors and represented by J. H. T. Bibb, guardian *ad litem,* and the following children by his first wife: Millie Wheeler, who is married to John H. Wheeler, and Ella Wright. The uncontroverted testimony showed that Emily Berry and James McCulloch were illegitimate children of one Elizabeth McCulloch, who died before James McCulloch, and that Emily Berry was sole survivor and next of kin to James McCulloch.

In accordance with the court's charge the jury returned the following verdict: "We, the jury, find for the plaintiff against the defendants and intervener, and canceling the deed executed by plaintiff, D. W. Powell, to Charles Staples, and vesting title to the land described in plaintiff's petition in plaintiff." Judgment followed for Powell for the land as against the heirs of Staples, and as against Emily Berry, and that she take nothing. Emily Berry has prosecuted an appeal to this court.

The only question presented by the appeal is: Under our law, can an illegitimate sister inherit from an illegitimate brother, both being of the same mother? At common law a bastard could not inherit. He was *filius nullius,* the son of no one. The father was not recognized because of the uncertainty of his identification, and recognition was denied the mother as a penalty for her transgressions, and as a further punishment the innocent issue of such unlawful intercourse was made the first of his line. The harshness of the common law has been relieved in nearly all the States of the American Union by statute. In the absence of any statutory provision, the courts of the State of Con-

necticut hold that bastards inherit to and from the mother, or any collateral relative on the mother's side. Dickinson's Appeal, 42 Conn., 491; 19 Am. Rep., 553; Heath v. White, 5 Conn., 228; Brown v. Dye, 2 Root, 280. Under the statutory provisions of the respective States in which the decisions were made it is held that bastards may inherit and transmit inheritance by the following cases: Garland v. Harrison, 8 Leigh, 368, et seq.; Hepburn v. Dundas, 13 Grattan, 219; Bennett v. Toller, 15 Grattan, 588; Moore v. Moore, 69 S. W. Rep. (Mo.), 278; Lewis v. Eustler, 4 Ohio St., 354; Burlington v. Fosby, 6 Vermont, 83; Briggs v. Green, 10 R. I., 495; Gumdy v. Hadfield, 16 R. I., 579; McGuire v. Brown, 41 Iowa, 650; Gregley v. Jackson, 38 Ark., 487; Butler v. Elyton Land Co., 84 Ala., 384; 4 So. Rep., 675; Miller v. Williams, 66 Ill., 91; Rogers v. Weller, 5 Biss., 166; Jenkins v. Drane, 121 Ill., 217; Bales v. Elder, 118 Ill., 436; Elder v. Bales, 127 Ill., 425; McBryde v. Patterson, 78 N. C., 412; Coor v. Starling, 54 N. C., 243; Parks v. Kimes, 100 Ind., 148; Messer v. Jones, 88 Maine, 349; 34 Atl. Rep., 177; Lawton v. Lane, 92 Maine, 170; 42 Atl., 352; Matter of Magee, 63 Cal., 414; Keeler v. Dawson, 73 Mich., 600; Brewer v. Blougher, 14 Pet., 178, construing the Maryland statute. And many of these cases hold that bastard children of the same mother may inherit from each other. Garland v. Harrison, 8 Leigh, 368, et seq.; Hepburn v. Dundas, 13 Grattan, 219; Moore v. Moore, 69 S. W. Rep. (Mo.), 278; Burlington v. Fosby, 6 Vermont, 83; Briggs v. Greene, 10 R. I., 495; Butler v. Elyton Land Co., 84 Ala., 384; 4 So. Rep., 575; Brown v. Dye, 2 Root, 280; Rogers v. Weller, 5 Biss., 166; McBryde v. Patterson, 78 N. C., 412; Parks v. Kimes, 100 Ind., 148; Brewer v. Blougher, 14 Pet., 178; Matter of Magee, 63 Cal., 414. Among the first to legislate on this subject was Virginia, which State at an early date passed a statute reading: "Bastards shall be capable of inheriting or of transmitting inheritance on the part of their mother in like manner as if they had been lawfully begotten of such mother." This statute first came under review by the Supreme Court of the United States in the case of Stevenson's Heirs v. Sullivant, 5 Wheaton, 207, where it was held that, notwithstanding this statute, a bastard was still at common law *filius nullius* as to his collateral blood relatives on his mother's side, and could not inherit from them. It next came under review in Scroggin v. Allan, 2 Dana, 363, in which the case of Stevenson's Heirs v. Sullivant was followed. There was an able dissenting opinion by Judge Underwood, in which he expressed it as his opinion that the statute places bastards upon the same footing in all respects as regards inheritance on the mother's side, with legitimate children. The statute did not come before the Court of Appeals of Virginia for its construction until May, 1837, when that court, in the case of Garland v. Harrison, *supra,* held that the bastard brothers of the decedent, as well as his mother, were entitled to take as his heirs under this statute. The court repudiated the construction placed on the statute by the Supreme Court of the United States in Stevenson v. Sullivant. Able and exhaustive opinions were delivered by each of the judges, all agreeing as to the purpose of the statute, and that its object was "to give to the bastard a mother and maternal kindred, and to make them inheritable from each other in the order prescribed by the law of

descents, as if the bastard had been lawfully begotten of such mother." This construction has been uniformly followed by the later decisions in that State. Hepburn v. Dundas, *supra;* Bennett v. Toler, *supra.*

On the 28th day of January, 1840, the Congress of the Republic of Texas adopted the following statute: "Bastards shall be capable of inheriting or of transmitting inheritances on the part of the mother, and shall also be entitled to a distributive share of the personal estate of any of their kindred on the part of their mother in like manner as if they had been lawfully begotten of such mother." Hartley's Dig., art. 587. Eight days prior to the passage of this statute the common law had been adopted in Texas. This statute is substantially the same as the statute of Virginia, and was adopted in Texas three years after it had been construed by the highest court in that State, and it would seem that in adopting the statute the Congress of the Republic intended to adopt the construction placed upon the statute by the courts of that State. The Virginia statute spoke only of "inheritance," and the word "inheritance" then applied only to real property, and it means real property now, exclusively, when it is used in its legal technical meaning. At common law, when one spoke of inheritance or inheriting, he referred to real property, title to which, on the death of the ancestor, vested in the heirs; title to the personal property of the ancestor did not vest in the heirs, but went to the personal representative of the de--cedent, viz., his administrator, and was by him administered, and distributive shares were by him apportioned among the heirs of the decedent. Knowing the sense in which the words inherit and inheritance were used at common law, it seems the Congress of Texas sought to make a more liberal statute than the Virginia statute by providing for the descent of personal property, as well as real property.

In 1848 the statute now known as article 1700 of the Revised Statutes of 1895 was adopted. It reads: "Bastards shall be capable of inheriting from and through their mother, and of transmitting estates, and shall also be entitled to distributive shares of the personal estates of any of their kindred, on the part of their mother, in like manner as if they had been lawfully begotten of such mother." This case depends upon the proper construction of this statute. So far as we are informed the question of whether bastards born of the same mother can inherit from one another has not been decided by any of the Appellate Courts of this State. The question is, therefore, one of first impression in this State. Although this statute is in derogation of the common law, it should be construed so as to give effect to the intention of the Legislature. Section 3, General Provision of Final Title of Revised Statutes, provides, "that the rule of the common law that statutes in derogation thereof shall be strictly construed, shall have no application to the Revised Statutes, but the said statutes shall constitute the law of this State respecting the subjects to which they relate, and the provisions hereby shall be liberally construed with a view to effect their objects and to promote justice." This provision then requires the statutes to be construed liberally, with a view of including among the class to be benefited all those who in justice and reason ought to receive its benefits, and forbid the application of the rule of exclusion, which would allow only those to receive the benefits who could not by

any possible construction be excluded. In 1836, prior to the adoption of the common law in Texas, the civil law was in force, and it has been held that under the civil law the mother of a bastard residing in Kentucky took by inheritance the land owned by the bastard in Texas, where he resided at the time of his death. Pettus & Lott v. Dawson, 82 Texas, 18. It was held by the Court of Civil Appeals for the First District, in the case of Ford v. Boone, 75 S. W. Rep., 353, that under article 1700 of the Revised Statutes, upon the death of a bastard son, who died intestate and without issue, the mother inherited her portion of his estate. In that case it was said by Judge Garrett: "The appellant here contends that under this statute the mother can not inherit from a bastard, or, if she does, that the reputed father inherits equally with her. It is claimed that 'transmitting estates' means that the estate shall descend and vest according to the statute. The capacity of transmitting estates, as conferred by the statute, seems to be general, but the statute must be construed with reference to the entire context. The bastard is excluded from inheriting through or from his putative father for the reason that the father is uncertain, and for the same reason the father should not inherit from him. Hence, 'transmitting estates' must be construed so as to exclude the father and pass the entire estate to the mother, since the brothers and sisters could only inherit through the father. The language is not clear, but the general purpose of all such statutes changing the common law in this respect is to give the reciprocal right of inheritance to both the bastard and his mother, and the statute of this State seems to intend to make the blood of the bastard heritable only on the part of the mother, but fully so in that respect." A writ of error was refused by the Supreme Court in that case. In our opinion the purpose of the change in the language of the statute was to make more plain the intent of the Legislature to give the bastard kindred, in law as well as in fact, on the part of the mother. The words "on the part of the mother" mean on the mother's side of the genealogical tree. Gregly v. Jackson, *supra.* By the use of the word "from" in the statute it was the intention of the Legislature to allow the bastard to inherit real property from the mother direct, the descent being direct on her death. But the Legislature went further and said inherit "from and through." Through means by means of, the channel by means of which. "From" is direct, "through" is indirect as well. "Through" here lets in any one to whom or from whom the blood of kinship can be traced, through the mother, wherever the blood of kinship can be traced through the mother there follows the right to inherit either in ascending or descending line. It can but mean that Elizabeth McCulloch, if living at the time of James McCulloch's death, would have inherited from him. The mother, if living, would be the connecting link between her children. Whether living or dead, the relation between her children remains the same, and her death makes no change in their relations, and can have no effect on stopping the flow of heritable blood between her children. The mother, if living at the time of descent cast upon her from any of her kindred, would pass it on at her death to her children, and her death before the descent cast ought not to prevent her child or children from inheriting her share. Were the children legitimate it would not, and as to her and

her kin all of her children are legitimate by statute. Her death can not interrupt the flow of heritable blood among her children and their rights among themselves, and their kindred are the same as if they were legitimate. The statute makes the bastard capable of "transmitting estates." While the statute does not repeat the words "through their mother" after these words, yet we think it follows, from the preceding language, "bastards shall· be capable of inheriting from and through their mother," that by the words "and transmitting estates" is meant transmitting estates through their mother. The statute makes no change in the status of the bastard as to the father, but he remains, as at common law, *filius nullius*. Having in law no father, the statute could not have meant that they were capable of transmitting estates to, or through, one unknown to the law. The object of the statute was to make the bastard kin of his mother in like manner as if he had been lawfully begotten of such mother, and to give him heritable blood on the part of his mother, with the reciprocal right, on the part of the mother and his collateral relatives on her side, to inherit from him through his mother in the event of his death intestate and without issue. Upon the death of James McCulloch intestate, and without child or children or their descendants, his wife, under the law of descent and distribution, was entitled to all his personal estate, and to one-half of his lands, and Emily Berry, his bastard sister, became entitled to the other half of his real estate, under article 1700 of the Revised Statutes above set out.

It follows from these remarks the trial court erred in instructing a verdict for plaintiff, and the judgment is reversed. and the cause remanded.

### ON REHEARING.

At the last term of this court, and on the 30th of March, 1907, the judgment in this case was reversed and the cause remanded. A motion for rehearing was filed, pending which we were requested to certify the case to the Supreme Court. Owing to the importance of the question involved, and the fact that it was one of first impression in this State, we certified the cause to the Supreme Court. That court, on the 30th of October, delivered its opinion, holding that, under the laws of descent and distribution of this State, an illegitimate sister can inherit from an· illegitimate brother, both being of the same mother. (101 Texas, ——.) This was the controlling question in the case, and the holding of the Supreme Court is in accord with the opinion of this court. Pending the motion for rehearing the opinion of this court, under its rules, was withheld from publication. The motion for rehearing is overruled.

*Reversed and remanded.*