BETTIE WILSON v. GEORGE WILSON.

(Filed 24 January, 1925.)

**Descent and Distribution—Statutes—Illegitimate Children—Widow.**

Where the owner of lands dies without lineal or collateral heirs, leaving a widow, the illegitimate son of his mother, born before her marriage with his father and being thus of the half blood, may not claim the estate from his father by descent, and the widow takes under the provisions of C. S., 1654, Rule 8.

APPEAL by defendant from judgment rendered by *Devin, J.,* at June Term, 1924, of MECKLENBURG.

Defendant demurs to the complaint *ore tenus* and thereby admits the facts to be as alleged therein.

Plaintiff, Bettie Wilson, is the widow of W. B. Wilson, who died, intestate, in June, 1921. No children were born of said marriage.

W. B. Wilson was the only child of Jane Wilson and of her husband, Lafayette Wilson. He was never married, except to plaintiff. He left no lineal descendant, or collateral relation, who can claim as his heir, unless defendant, George Wilson, who is the illegitimate son of his mother, Jane Wilson, born before her marriage to his father, Lafayette Wilson, can claim as his heir. Both Jane and her husband, Lafayette Wilson, were negroes, of the whole blood. George Wilson, son of Jane Wilson, is a mulatto.

At his death W. B. Wilson was seized in fee and in possession of a lot of land in the city of Charlotte, N. C., and of an undivided one-half interest in a lot of land in Newton, N. C., both lots being fully described in the complaint.

Plaintiff, Bettie Wilson, contends that W. B. Wilson, her husband, left no one who can claim as his heir; that she, as his widow, is deemed his heir, under C. S., 1654, Rule 8, and that she is therefore the owner and entitled to the possession of the land described in the complaint, of which W. B. Wilson died seized in fee, and prays that the adverse claim of defendant be adjudged and decreed a cloud upon her title to the said land.

Defendant George Wilson contends that, upon the facts alleged in the complaint and admitted by his demurrer, he is the sole heir of W. B. Wilson, deceased, and is therefore the owner of said land, and prays that he be so declared.

From judgment sustaining the contention of plaintiff defendant appealed. The only assignment of error is based upon defendant's exception to the judgment.

*Thaddeus A. Adams for plaintiff.*
*Jones, Williams & Jones, and Clarkson & Taliaferro for defendant.*

CONNOR, J. Jane Wilson, at her death, left surviving two sons—one born out of wedlock, before her marriage, and therefore illegitimate; the other, born after and during her marriage to Lafayette Wilson, and therefore legitimate. Jane Wilson and her husband, Lafayette Wilson, were both negroes. George Wilson, the illegitimate son of Jane Wilson, is a mulatto. It is admitted that Lafayette Wilson, husband of Jane, was the father of W. B. Wilson. He is dead, leaving a widow, but no lineal descendant, or collateral relation, who can claim as his heir, unless the defendant, the illegitimate son of his mother—his half-brother—is such collateral relation and can claim as his heir. Otherwise, plaintiff, his widow, shall be deemed his heir. C. S., 1654, Rule. 8.

The only question presented by this appeal is whether an illegitimate child is a collateral relation of, and capable of inheriting from, a legiti-

mate child of the same mother, under C. S., 1654, Rule 5. The answer to this question must be negative, and the judgment below affirmed, unless there was, some statute in force in North Carolina, at the death of the legitimate child, under the provisions of which an illegitimate child can inherit from a legitimate child of the same mother. "At common law, there is no collateral descent to or from a bastard." *Flintham v. Holder,* 16 N. C., 345.

In this case it was held that, by virtue of the act of 1799, chapter 522, which is set out in the opinion, "Where there are children of the same mother, some born in wedlock and some illegitimate, the former class may inherit from the latter, and the latter may inherit from each other, but the latter cannot inherit from the former." The act of 1799, chapter 522, as amended, is brought forward in the Consolidated Statutes as rule 9 and rule 10 of section 1654, chapter 29, entitled "Descents." *Judge Ruffin,* construing this act, and discussing the reasons for its enactment, says: "It is manifest that the moral and political consideration which excluded bastards from the succession to the mother, where there is legitimate issue, have no force to exclude the legitimate from the succession to a bastard brother. They powerfully apply, indeed, when a bastard shall claim to succeed to a legitimate brother. Accordingly, we find nothing of the sort in the act. There is no provision for a descent from a legitimate to a bastard."

Under this act, the inheritance of a mother descended to her illegitimate children only when she left no children born in lawful wedlock. If there were both legitimate and illegitimate children, only the former inherited from the mother. The latter were excluded. The reason for this provision, as stated by *Judge Ruffin,* was as follows: "To encourage the marriage, and prudent marriage, of the mother, and thereby promote the real good of the illegitimate issue themselves, the statute holds out the inducement to a husband that *his* children shall succeed to the whole of their mother's estate, in exclusion of others." The General Assembly of a later day evidently did not think this a sufficient reason for the exclusion of the unfortunate children of a nameless father, who, in addition to bearing through life the burden of a social stigma, for which they were not responsible, were deprived by the law of a share in their mother's property if she left surviving legitimate children. Chapter 71, Laws 1913, provides that "every illegitimate child of the mother, and the descendants of such child, deceased, shall be considered an heir." Thus the law now makes no discrimination between legitimate and illegitimate children with respect to the inheritance from their mother, except that the illegitimate child or children shall not be capable of inheriting of such mother any land or interest therein which was conveyed or devised to such mother by the father of the legitimate child or children;

and except, further, that such illegitimate child or descendant shall not be allowed to claim, as representing such mother, any part of the estate of her kindred, either lineal or collateral.

Chapter 71, Laws 1913, now rule 9, C. S., 1654, does not apply, however, to this case, for here the inheritance is not claimed from the mother. Rule 9 provides only for descents from a mother who leaves surviving an illegitimate child or descendants of such child. Such a child is an heir of the mother, without regard to whether she leaves or does not leave a legitimate child.

Rule 10, C. S., 1654, relates only to descents from illegitimate children. Its provisions are identical with those of the act of 1799, chapter 522, in this respect. It expressly provides that "Illegitimate children shall be considered legitimate as between themselves and their representatives. In case of the death of any such child, or his issue, without leaving issue, his estate shall descend to such person as would inherit if all such children had been born in wedlock." The rule does not apply to descents from a legitimate child, and the law in this State, with respect to such descents, is the same now as it was when the opinion in *Flintham v. Holder, supra,* was delivered at December Term, 1829. It was then held to be the law that "bastards can never inherit but from the mother and from each other." Thus the law remains.

Defendant cites and relies upon the opinion in *University v. Markham,* 174 N. C., 338, to sustain his contention that under rule 10 he can claim as heir of his legitimate brother. *Justice Walker,* discussing this rule, says: "It will be seen from a literal recital of the statute that illegitimates are deemed, in law, legitimate as between themselves and their representatives, and their estates descend accordingly—that is, as if they had been born in wedlock. There is nothing dubious about this part of the statute, but, on the contrary, its language is plain, direct and perfectly intelligible. The statute, therefore, further provides that where there are legitimate and illegitimate children of the same mother, and one of them, whether of one class or the other, shall die without leaving issue, or if, having issue, one or more of such issue should die without leaving issue, the descent will be the same as if all of the children had been legitimate, or born in lawful wedlock." Rule 10 clearly applies to descents from illegitimates only. The learned justice had this in mind, for he cites, with approval, *Arrington v. Alston,* Taylor's Law and Equity, p. 310; *Flintham v. Holder,* 16 N. C., 345, and *McBryde v. Patterson,* 78 N. C., 412. It is held that a legitimate child may, by virtue of this statute, inherit from an illegitimate brother or sister. This Court has held, both expressly and by implication, that the converse of the proposition is not the law.

Defendant, illegitimate son of Jane Wilson, mother of W. B. Wilson, her legitimate son, is not a collateral relation of W. B. Wilson, capable of inheriting from him. W. B. Wilson left no one who can claim as his heir, and therefore plaintiff, his widow, is deemed, in law, his heir, and as such inherits his estate. The judgment is

Affirmed.