ANNIE BRYANT AND J. H. BRYANT, HER HUSBAND, V.
WILLIE BRYANT ET AL.

(Filed 28 October, 1925.)

**1. Descent and Distribution—Heirs—Widow—Statutes.**

The estate of a deceased husband is cast upon his widow as his heir only when there are no other lawful heirs. C. S., 1654.

**2. Same—Illegitimate Children.**

Under Rule 10, of Descent, where an illegitimate son has married, leaving surviving illegitimate brothers and sisters of the same mother, they may collaterally inherit the estate under the provisions of C. S., 1654, and the inheritance cannot be cast upon his surviving widow, as his heir. C. S., 1654. Canon 13 of Descent has no application.

VARSER, J., not sitting.

APPEAL by the defendants from *Grady, J.,* at May Term, 1925, of ROBESON.

Petition for the sale of land for partition heard upon the following agreed statement of facts:

That Ned Faulk and Maria Faulk were slaves belonging to Col. Hinnard Faulk and that they lived together as man and wife during slavery. That it is admitted that such cohabitation by slavery was not recognized as a legal marriage under the law; that this cohabitation continued until about 1857; that about that year Ned Faulk was sold as a slave to a person living in Alabama and was carried by such purchaser to Alabama and never returned; that to the above cohabitation the following named children were born prior to the time that Ned Faulk was sold and carried to Alabama: Beadie Faulk, Isham Faulk, Archie Faulk, Letzy Faulk, Miles Faulk; Tom Godwin; that Tom Godwin was originally a Faulk, but was given by Col. Faulk to his son-in-law, Berry Godwin, and thereafter Tom Faulk took the name of Tom Godwin. That the above-named full brothers and sisters of Tom Godwin died previous to the said Tom Godwin and some time after 1885, and before 1900; that the above-named brothers and sisters of Tom Godwin each left legitimate children born in lawful wedlock; and that these children and their heirs, and their lawful issue, are named and set forth in the amended petition filed in this cause, and, as such children, claim to be heirs at law of Tom Godwin, as their uncle and great uncle, and claim the property described in the petition.

That on 28 January, 1880, Tom Godwin married Mary Ann Gilmore; that at the time of this marriage Mary Ann Gilmore by her former husband named Gilmore, was the mother of Julia Gilmore and Willie Ann Gilmore, sometimes called Willie Ann Godwin, who are

now in the possession of the lands described in the petition; that in 1882 Tom Godwin purchased the lands described in the petition from Berry Godwin and others, and that the said Tom Godwin and wife, Mary Ann Gilmore, lived on the said lands up until his death, which occurred about the year 1909, without lawful issue or children, leaving his widow, Mary Ann Godwin, and her two children by her former husband, to wit, Julia Gilmore and Willie Ann Gilmore, sometimes called Willie Ann Godwin, surviving him, who remained in possession of said lands thereafter up until the time of the death of his widow, Mary Ann Godwin, which occurred in the spring of 1923; that since her death her children by her first husband, Gilmore, to wit, the said Willie Ann Godwin and Julia Gilmore, have been in continued possession up until the institution of this action, and are still in possession of said lands, and have paid the taxes thereon. That Tom Godwin left no will.

That upon the foregoing statement of facts the petitioners, and those defendants who are the children and heirs at law of the brothers and sisters of Tom Godwin, claim to be the owners in fee and entitled to the immediate possession of the lands described in the amended petition.

That upon the foregoing statement of facts the defendants, Julia Gilmore and Willie Ann Godwin, claim that their mother, Mary Ann Godwin, under Rule No. 8 of the statutes of descent, was the lawful heir of said Tom Godwin, deceased, and inherited the lands in controversy, that upon her death Julia Gilmore and Willie Ann Gilmore, as her lawful children and heirs at law, inherited said lands from the said Mary Ann Godwin and said lands immediately descended to them.

Judgment was rendered against the appellants and in favor of the appellees, declaring their interest in the land and ordering a sale for partition. Appellants excepted and appealed.

*McLean & Stacy, McKinnon & Fuller and Johnson, Johnson & McLeod for plaintiffs.*
*Britt & Britt for defendants.*

ADAMS, J. On 28 January, 1880, Tom Godwin married Mary Ann Gilmore, who, by a former husband, was the mother of the appellants, Julia Gilmore and Willie Ann Gilmore. In 1882 he purchased the land in controversy and died without lawful issue in 1909. Mary Ann Gilmore died in 1923. The appellants are in possession of the land and claim title thereto under Rule 8 of the Canons of Descent: "When any person dies leaving none who can claim as heir to him, his widow shall be deemed his heir and as such shall inherit his estate." C. S., 1654. The specific question, then, is this: Did the title acquired by Tom Godwin vest, upon his death, in the legitimate issue of his

illegitimate brothers and his illegitimate sisters, as contended by the appellees, or in his widow, Mary Ann Godwin, as contended by the appellants?

In express terms Rule 8 provides that the widow shall be heir only when there is no one else who can claim as heir. *University v. Markham,* 174 N. C., 338; *Powers v. Kite,* 83 N. C., 156. If, then, the representatives of Tom Godwin's illegitimate brothers and illegitimate sister may inherit from him, his widow if living would be excluded and her children will be barred.

It is perfectly clear that Rule 13 has no application to the facts, for it confers the right of inheritance upon the children only as to the estate of their parents; not as to collaterals. *Tucker v. Bellamy,* 98 N. C., 31; *Tucker v. Tucker,* 108 N. C., 236; *Bettis v. Avery,* 140 N. C., 184; *Croom v. Whitehead,* 174 N. C., 305. The appellees admit this and say that the descent was cast upon them by virtue of Rule 10: "Illegitimate children shall be considered legitimate as between themselves and their representatives, and their estates shall descend accordingly in the same manner as if they had been born in wedlock. And in case of the death of any such child or his issue, without leaving issue, his estate shall descend to such person as would inherit if all such children had been born in wedlock: *Provided,* that when any illegitimate child dies without issue, his inheritance shall vest in the mother in the same manner as is provided in Rule 6 of this chapter." C. S., 1654.

This rule has been construed in a number of decisions. In *Powers v. Kite, supra, Ashe, J.,* who wrote the opinion for the Court, said: "This rule has received an interpretation by repeated decisions of this Court, which it is now too late to controvert. The construction given to the rule is, that if an illegitimate or natural-born child shall die intestate without leaving any child or children, his or her estate shall descend to and be equally divided among his or her brothers and sisters, born of the body of the same mother, and their representatives, whether legitimate or illegitimate, in the same manner and under the same regulations and restrictions as if they had been born in wedlock." It will be noted that in this quotation the words "whether legitimate or illegitimate" follow the words "and their representatives"; but in *Tucker v. Tucker, supra, Clark, J.,* held that while the rule allows illegitimate children to be legitimate as between themselves and their representatives, it contemplates that such representatives shall themselves be legitimate representatives of the illegitimate child. In the statement of facts, however, it is admitted that the brothers and the sister of Tom Godwin each left children born in lawful wedlock and that the legitimate representatives claim as his heirs at law. Under these

circumstances the appellees hold the title acquired by Tom Godwin and are entitled to the relief demanded. In addition to the cases cited see, also, *Ashe v. Mfg. Co.,* 154 N. C., 241; *McBryde v. Patterson,* 78 N. C., 412; *Flintham v. Holder,* 16 N. C., 345.

The judgment is
Affirmed.

VARSER, J., not sitting.