Jacob Bisson et al., Respondents, *v.* West Shore Railroad Company, Appellant, et al., Respondents.

Same, Respondents, *v.* Chauncey M. Depew, Appellant, et al., Respondents.

W. by his will gave his real estate to his wife for life if she remained unmarried, if not, until her marriage, and upon her death or marriage he. gave the said real estate to his and his wife's heirs, "their heirs and assigns forever, share and share alike." In an action for partition, brought after the death of the widow, *held*, that all of the persons who at the time of the widow's death answered the description of heirs at law, either of the testator or of his widow, took an undivided interest. in the lands as members of the same class *per capita* and not *per stirpes.* Reported below, 66 Hun, 604.

(Argued June 6, 1894; decided October 9, 1894.)

Appeals from judgments of the General Term of the Supreme Court in the fifth judicial department, entered upon orders made January 18, 1893, which affirmed final judgments in favor of plaintiffs entered upon reports of a referee, and also appeals from interlocutory judgments in the above-entitled actions.

These were actions for the partition of lands; formerly owned by Louis Wackerman, in Erie county, and which he disposed of by a last will in the following manner, namely: "To my said wife, Maria Bernhardina Wackerman, I give and bequeath all my real estate that I may die seized with for and during the term of her natural life, provided she, my said wife, shall remain my widow; and from and after her decease. or marriage (which shall first happen) I give, devise and bequeath all my said real estate unto my heirs and my said

wife Maria Bernhardina's heirs, their heirs and assigns forever, share and share alike."

His wife survived him, but no issue; an only child of the marriage having died before the making of the will. The widow never re-married. When she died, her heirs were sixteen in number, representing three stocks; while the heirs of Louis Wackerman, her husband, then were fourteen in number, representing four stocks.

At the date of his, the testator's death, the representatives upon his and his widow's side had been as follows, viz.: upon his side the heirs were ten in number and represented five stocks, and upon her side they were eleven in number and represented three stocks. The plaintiffs contended that the heirs of Louis Wackerman and those of Maria, his wife, are entitled, each, to an equal share in this estate; while the defendants contend that the estate vested one-half thereof in the one set of heirs and one-half thereof in the other set; and that each class took *per stirpes.*

The referee held that all those persons who, at the time of the widow's death, would answer the description of heirs at law, either of the testator, or of his widow, took an undivided interest in the lands, as members of the same class, *per capita* and not *per stirpes.* The General Term affirmed the judgment upon the referee's report and the defendants appealed to this court.

*Ashbel Green* for appellant. Courts, in construing a will, regard the circumstances under which it was made — the state of the testator's property, and of his family, and other similar circumstances. (4 Kent's Comm. 533; 1 Jarman on Wills, 422; *Ritch* v. *Hawkhurst,* 114 N. Y. 512; *Bond's Appeal,* 31 Conn. 190; *Williams* v. *Bradley,* 3 Allen, 280; *De Witt* v. *Yates,* 10 Johns. 156; *Blake* v. *Hawkins,* 98 U. S. 324.) When a will is capable of two interpretations, that one should be adopted which prefers those of the blood of the testator to strangers. (*Van Kleeck* v. *Dutch Church,* 20 Wend. 457; *Scott* v. *Guernsey,* 48 N. Y. 106; *Queen* v. *Hardenbrook,* 54

id. 86 ; *Kelso* v. *Lorillard*, 85 id. 182 ; *Wood* v. *Mitcham*, 92 id. 379.) If the will " is equally susceptible of one or another interpretation the court should, on every principle of right and within the spirit of all the authorities, give it that which is most equitable and consonant with the dictates of justice." (*In re Paton*, 111 N. Y. 486 ; *In re Brown*, 93 id. 295.) The distribution of estates *per stirpes* among the representatives of deceased persons is well established as the most equitable disposition, and is in harmony with the dictates of natural feeling. (*Parish* v. *Delafield*, 25 N. Y. 9 ; *Clark* v. *Lynch*, 46 Barb. 81.) Where the gift is to persons in different degrees of relationship to the testator, an intent to divide *per capita* rather than *per stirpes* must be shown by the unmistakable terms of the will. (*Clark* v. *Lynch*, 46 Barb. 68 ; *Coster* v. *Butler*, 63 How. Pr. 311.) A nephew of the testator's wife should not take an equal share with a brother of the testator himself, without the strongest possible indication of the testator's intent. But, under the plaintiff's contention, this is precisely what occurs. This is a construction at " variance with the natural disposition of mankind." (*Talcott* v. *Talcott*, 39 Conn. 189 ; *Woodward* v. *Jones*, 115 N. Y. 359 ; *Clark* v. *Lynch*, 46 Barb. 81 ; *Cushman* v. *Horton*, 59 N. Y. 149 ; *Clark* v. *Cordis*, 4 Allen, 466 ; *Rand* v. *Sanger*, 115 Mass. 124 ; *Daggett* v. *Slack*, 8 Metc. 454 ; *Balcom* v. *Haynes*, 14 Allen, 204 ; *Woodward* v. *James*, 44 Hun, 95.) Where the estate is to be divided " equally," or " share and share alike," if these words can be satisfied under a division among the beneficiaries *per stirpes*, such division will be made. (*Clark* v. *Lynch*, 46 Barb. 68 ; *Brett* v. *Horton*, 5 Jur. 696 ; *Balcom* v. *Haynes*, 14 Allen, 204.) At the death of the testator an undivided one-half interest in all his real estate vested in his heirs as a class, subject to his wife's life estate. (*Campbell* v. *Rawdon*, 18 N. Y. 412 ; *Lane* v. *Brown*, 20 Hun, 382 ; *Stevenson* v. *Lesley*, 70 N. Y. 512.)

*Joseph H. Burr* for respondents. The referee correctly held that the devise of the remainder of Louis Wackerman's

will was a devise to a single class, to take effect upon the death of his wife, such class consisting of all persons who at that time would answer the description either of his heirs or her heirs. (*Armstrong* v. *Moran*, 1 Bradf. 314.) Where there is a devise to a class and the direction of the will is that the estate shall be "equally divided," or "share and share alike," the members of the class take *per capita* and not *per stirpes*, in the absence of affirmative evidence of a contrary intent in the will, and this is so even though the devisees stand in different degrees of consanguinity to the testator. The use of these words supersedes the measure of distribution by the statute. (*Blackler* v. *Webb*, 2 P. Wms. 383; *Murphy* v. *Harvey*, 4 Edw. Ch. 131; *Myers* v. *Meyers*, 23 How. Pr. 410; *Bunner* v. *Storm*, 1 Sandf. Ch. 357; *Seabury* v. *Brewer*, 53 Barb. 663; *Armstrong* v. *Moran*, 1 Bradf. 314; *Lee* v. *Lee*, 39 Barb. 172; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Morgan* v. *Pettit*, 3 Dem. 61; *In re Verplanck*, 91 N. Y. 439; *Graves* v. *Graves*, 55 Hun, 58; 126 N. Y. 636.) It is no objection to this construction of the will that while the heirs of Mr. Wackerman were necessarily determined at his death, the heirs of Mrs. Wackerman could not be determined until her death. (*Moore* v. *Littell*, 41 N. Y. 61; *Sheridan* v. *House*, 4 Keyes, 569; *Tucker* v. *Bishop*, 16 N. Y. 402; *Teed* v. *Morton*, 60 id. 506; *Johnson* v. *Valentine*, 4 Sandf. 37; 3 Washb. on Real Prop. 511; *Stevenson* v. *Lesley*, 70 N. Y. 512.) No inference can be drawn as to the probable intent of the testator from the fact that under this construction persons in different degrees of consanguinity to the testator took equal shares of his estate. (*Peacock* v. *Faulkner*, 1 Bro. C. C. 296.)

Gray, J. In the construction of wills, the court must look for something which will exhibit the intention of the testator; either actually, or so suggestively as to permit it to be inferred.

If the instrument is silent as to intention and stands as a mere expression of a will, effect must be given to it according to those rules, which, from long acquiescence, have acquired the force of

authority. The present seems to be such a case. We are without any indication as to the intentions of the testator in making this disposition of his realty, other than in the particular clause of the will itself.

Therefore, I am the less reluctant to yield my views to those entertained by the majority of the members of this court.

Upon its face, the testamentary clause refers to two classes of heirs, and that the estate should be divided between them, giving one-half to each class, has seemed to me to be, under the circumstances, the juster disposition to make; because such an intention seems the more natural one to be attributed to the testator. This view is not without support in the cases. (*Holbrook* v. *Harrington*, 16 Gray, 102; *Bassett* v. *Granger*, 100 Mass. 348.) The clause is, however, deemed, from its peculiar arrangement, to resolve all, who would be heirs of the testator, or of his widow, at her death, into one class; to each individual of which was given an equal interest. In the absence of anything to show a contrary intention, I am obliged to admit that the language of the clause gives warrant to that conclusion. In affixing, to the gift of his estate to his heirs and his wife's heirs, the words " their heirs and assigns forever, share and share alike," the testator may be said by his language to have grouped all of the heirs in one class; the individuals of which are indistinguishable one from the other as objects of his bounty.

There being but the one class, there can be no doubt but that the division must be made *per capita* among the persons entitled and not *per stirpes*. I think the words "share and share alike " make that sufficiently clear. Such a direction cannot be distinguished, practically, from one to divide equally. (*Mattison* v. *Tanfield*, 3 Beavan, 131.)

The testator has used the word " heirs " to describe the persons who are to take and not to fix the interest which would vest in each person by virtue of his heirship, or representation of a stock — a preferable construction where the context will permit.

His gift is to a class, to be composed of those who are his or his wife's heirs, and `the members take as purchasers and as though each had been named. The word " heirs," while generally and technically conveying the idea of representation, is not necessarily always to be understood in that sense. Though a word of limitation, it may be used, as it is here, as one of designation of the devisees, in whom at a fixed time the estate devised shall vest in possession. So, it has been held that if a bequest is made to " issue " as purchasers, all those who answer the description will take *per capita ;* in the absence of anything to show an intention that they shall take *per stirpes.* (*Davenport* v. *Hanbury,* 3 Ves. 257; *Leigh* v. *Norbury,* 13 id. 340.)

Though the heirs of the testator were determinable at his death, yet the gift to them was not, by the terms of the will, to vest in possession until after the termination of the life estate given to the widow. That was the time fixed for the gift to take effect and then was the time when the persons would be ascertained, who, coming under the description of heirs of the testator, would be entitled to share with the heirs of his widow, in the distribution of the estate. Within that time the number of his heirs might be diminished by death, or increased by births. (See *Stevenson* v. *Lesley,* 70 N. Y. 512; *Teed* v. *Morton,* 60 id. 506.)

The application of the rule that the division of the estate is to be *per capita,* in a case where the language of the gift, like the present case, requires equality in the shares, is sanctioned by authority.

It was early held that where the subject of the testamentary gift was to be " equally divided," the persons would take *per capita,* among whom the division is to be made; unless a contrary intention is discoverable in the will. (*Murphy* v. *Harvey,* 4 Edw. Ch. 131; *Bunner* v. *Storm,* 1 Sandf. Ch. 357; *Collins* v. *Hoxie,* 9 Paige, 81.) In *Stevenson* v. *Lesley* (70 N. Y. 512) the testator used the words " share and share alike" and they were considered as a direction to divide *per capita.* In that case, Judge ANDREWS relied, as did also the

chancellor and the assistant vice chancellor in *Collins* v. *Hoxie* and in *Brunner* v. *Storm*, upon the decision, among others, of Chancellor KING in *Blackler* v. *Webb* (2 P. Wms. 383). That case, though the subject of much criticism, has never been rejected as an authority in this state. Its existence as a rule of construction has been recognized ; but its application has been closely confined to cases where nothing in the context of the will can be referred to, to control the language of a devise or bequest, which places all the persons, who are to benefit by it, upon an equality ; irrespective of their different degrees of relationship to the testator. Undoubtedly, and very justly, that rule has yielded and should yield, as it has been said, " to a very faint glimpse of a different intention in the context." (2 Jarman on Wills, 1051, and see *Ferrer* v. *Pyne*, 81 N. Y. 284; *Vincent* v. *Newhouse*, 83 id. 505; *Woodward* v. *James*, 115 id. 346.)

In *Brunner* v. *Storm* (*supra*) the assistant vice chancellor admitted that if certain testimony could have been received, it would be strong, if not conclusive, evidence to show that the *per capita* rule of division was not within the intention of the testator ; but he felt compelled to attribute that intention only which the plain language of the will evidenced. In *Ferrer* v. *Pyne* and in *Vincent* v. *Newhouse*, DANFORTH, J., who delivered the opinion of the court in each case, observed that it was unnecessary to go to the length, to which some courts have gone, of rejecting the rule of *Blackler* v. *Webb ;* because wherever the rule is adopted, it is also held to be governed by the context. Two cases, where the rule of division *per capita* has been followed, are somewhat instructive. In *Mattison* v. *Tanfield* (3 Beav. 131), the testator devised certain real estate in trust " for the person or persons, who at the time of my decease shall be the next of kin of R. D. ; * * * according to the statute made for the distribution of intestate's effects * * * as tenants in common " etc. At his death, R. D.'s descendants stood in different degrees of propinquity and the question was whether they were to take *per capita* or *per stirpes.* Lord LANGDALE, master of the rolls, stated the

question to be "whether the words of the will import an intention that the next of kin, though some of them derive their character as such by representation, are, nevertheless, to take *per capita*" and he said : "The case seems to show that the word 'equally,' or the words 'share and share alike,' would there have had that effect. But the gift in this case is to the persons and their heirs as tenants in common and these words are not exclusively applicable to equal interests, as the words 'equally' and 'share and share alike;' and there being nothing in the will to show a contrary intention, I think that the parties   *   *   *   must, under the will, take by virtue of representation." He directed the distribution, therefore, to be *per stirpes*. In *Dugdale* v. *Dugdale* (11 Beav. 402), Lord LANGDALE applied the *per capita* rule in the division of a bequest; where it was to be equally divided amongst the next of kin of testator, both maternal and paternal, as should be living at the time of his death. When that event happened, there were two next of kin *ex-parte paterna* and one *ex-parte materna*.

Unlike most cases, in which the question would arise, we have nothing in this will to justify us in refusing to follow the direction apparent upon the face of the clause containing the devise, and, for the reasons stated, we hold that the devise here was to a single class, consisting of all those individuals who, at the time of the death of testator's widow, would answer the description of his heirs or of her heirs, and that all such would take *per capita*.

The judgment appealed from, in each of these cases, should be affirmed; with costs to the respondents.

All concur.

Judgment affirmed.