D. C. GRANTHAM ET ALS. v. EZRA JINNETTE ET ALS.

(Filed 28 March, 1919.)

1. **Wills—Devise— Estates— Contingent Remainders— Heirs— Questions of Law—Extrinsic Evidence—University of North Carolina—Statutes.**

   A devise by an illegitimate of all of the real and personal property to his wife, and after her death the property to be sold by the executor and the proceeds to be divided among his "legal heirs" after the payment of certain bequests after the death of the wife: *Held*, the terms of the will are unambiguous and the expression "legal heirs" must, as a matter of law, be given their legal significance without the aid of parol evidence tending to show that the testator regarded the children of his mother's sister as his next of kin, or erroneously thought they would inherit as such. The devise being effective upon the death of the wife, the lands of the testator would go to the University of North Carolina under the statute upon the death of the wife and the failure of heirs of the testator at that time.

2. **Wills— Heirs at Law— Husband and Wife— Statutes— Wife an Heir— Contingent Remainders—Estates.**

   Where a testator has devised all of his real and personal property to his wife, the executor to sell the property left by her at her death and divide the proceeds among his "legal heirs," and the wife has taken under the will and has died, and there are no heirs of the testator at that time to take under the terms of the will: *Held*, the widow was not the heir at law of her husband under the common law, and the statute (Revisal, sec. 1556), while making her an heir of his, does so, under Rule 8, where the husband has not devised the property, and when there are no heirs at law of the testator at the time of the wife's death the inheritance will not descend to her heirs at law, nor can they take against the express provisions of the will.

ALLEN, J., dissenting.

APPEAL by defendants from *Daniels, J.,* at November Term, 1918, of WAYNE.

The plaintiffs have brought an action to recover the property in question from the defendants, who are in possession, and the University of the State has intervened and been made a party by order of court.

From a judgment for the plaintiffs the defendants and the intervenor appealed.

*Langston, Allen & Taylor, J. L. Barham, Dickinson & Land, J. F. Thomson, W. W. Cole, and D. C. Humphrey for plaintiffs.*

*W. S. O'B. Robinson, A. C. Davis, Teague & Dees, Leon G. Stevens, and D. H. Bland for defendants.*

*Bryan & Brogden, Hood & Hood, and Murray Allen for the University of North Carolina, the intervenor.*

GRANTHAM *v.* JINNETTE.

CLARK, C. J. The case turns upon the construction of the following clauses of the will of Haywood Bizzell:

"Item 3. I give and bequeath to my beloved wife, Elizabeth, for the term of her life, all the balance of my real estate, all personal property of every kind of which I shall die seized or possessed."

"Item 5. After her death, I desire that all property, real and personal, left by her under Item 3 of this will shall be sold publicly or privately, as he (the executor) shall think best, and the proceeds shall be divided among my legal heirs, subject to the following bequests."

The following admissions were made on the trial and entered in the record:

1. That the testator was an illegitimate son, born in 1833; that his mother was never married, and died in 1862, and that the testator was her only child; that the testator married in 1856, but no children were born of said marriage; that he died in December, 1896, leaving his widow and the will in question; that at the time of his death he was seized in fee and possession of the lands in question, which were all acquired by purchase.

The plaintiffs do not claim that they are the heirs at law of the testator, nor that they are entitled to any part of his estate under the statute of descents (*Bettis v. Avery,* 140 N. C., 184), but they contend that they are the persons referred to and intended by the testator in the use of the words "my legal heirs," and that by parol testimony they can show that by the devise of his property, after the life estate given his wife, to "my legal heirs" he intended Mack McCullen and Frank McCullen. Cal (or Mack) McCullen and Frank McCullen were the sons of Ann Bizzell, the sister of the testator's mother, who married a McCullen. Mack McCullen and Frank McCullen are dead and the plaintiffs are his heirs at law. The language on which the plaintiffs rely is the testimony of one Odom, that on one occasion his father said to the testator, "Haywood, what are you going to do with your property?" To which he replied, "Well, I don't know. I have never decided exactly what I will do with it." And when further asked, "Haven't you got no kin people?" to which he said, "Yes, I have got some kin people. Mack McCullen and Frank McCullen are kin to me." Witness said that was about twenty-five years ago and about three or four years before testator died.

R. A. Whitfield, witness for the plaintiff, testified that he heard the testator say that Mack McCullen was the nearest kin he had. John White testified that he had seen the testator a few times; that a year or a year and a half before he died, when he went to pay him some rent, the testator "got to talking with him, and he said he had no children and no kinsfolk, but the McCullens were kin to him and would be his heirs he reckoned.

Davis Wiggins testified that the testator "took dinner with him on one occasion and stated in conversation that his mother was a Bizzell; that Annie McCullen was her sister, and spoke of his mother and Cal's mother being sisters; that he does not remember hearing him speak of any one else."

This evidence, taken to be true, cannot vary the expression in the will that the property, after the life estate given to his wife, should go to his "legal heirs." There is no ambiguity. The devise is to a class—"my legal heirs"—and who they were is a matter of law, even if the testator had erroneously supposed that under the law illegitimates could inherit as heirs; but the evidence and the will show that he did not.

Upon the evidence, the motion for nonsuit as to the plaintiffs should have been granted. This is not the case where there is a latent ambiguity as to the person intended, and evidence is admitted which shows that the testator was in the habit of calling the person by the name set out in the will, though it was not the true name of the person. It often happens that the person is known by a nickname or some other name in common use, and such designation is shown by parol testimony to point out the devisee who was intended; but in all those cases the person was clearly intended and the question is only of identification.

But here the class is clearly and definitely stated in terms that admit of only one construction, "my legal heirs," and admittedly Mack McCullen and Frank McCullen did not come within that designation. Besides, the will was written several years before the death of the testator, when his wife was some forty years old. It was by no means improbable that he might have children by her, or that she might die and he might have children by a second marriage. If the loose words used were sufficient to substitute Mack McCullen and Frank McCullen in lieu of the words "my legal heirs" it would not only contradict the terms of the will, which is unambiguous, but if there had been the subsequent birth of children by his then wife, or by any subsequent wife, they would have been incapable of inheriting as against the two McCullens. This construction is therefore not to be entertained, and it would be useless to cite the numerous cases which are to be found in all the books to the effect that when an unambiguous expression is used in a will, such as "my legal heirs," it cannot be contradicted by verbal statements put in evidence twenty-five years later, or at any other time, showing that the testator recognized as related to him persons who were not his legal heirs, and that he intended that the property should go to them in spite of his devising his estate not to them, but to "his legal heirs." Who are the "heirs" is not a matter for the jury, but a matter of law for the Court. *Bradford v. Erwin,* 34 N. C., 291; *Morrison v. McLaughlin,* 88

N. C., 255; *Patterson v. Wilson,* 101 N. C., 597. Besides, the testimony, if competent, was not sufficient to be presented to the jury.

The defendants, who are in no wise related to the testator, claim as heirs of the wife and insist that she was entitled under Revisal, 1556, which provides, "When any person shall die leaving none who can claim as heir to him, his widow shall be deemed his heir, and as such shall inherit his estate." This would apply only if there had been no will, or a will not disposing of the entire estate. In such case this property would have gone to the wife and then to the defendants as her heirs. But here the testator disposed of all his property by his will and intended to dispose of it fully, which conclusively appears from the will itself; and this being the case, when there is a default in the "legal heirs" to whom a part of the remainder of the estate is devised, it does not go to the wife, but to those who fill the designation of legal heirs at the time the remainder should fall in.

The testator devised and bequeathed to his "wife, Elizabeth, for the term of her life, all the balance of my real estate, all personal property of any kind of which I shall die seized and possessed." She elected to take under the will and never dissented.

In Item 2 of the will the testator had given to Preston Thornton 106 acres of land described in the will and the balance of the estate to his wife for life.

Item 4 of the will provides: *"After the death* of my said wife, I devise and bequeath to the Oxford Orphan Asylum $1,000, to be collected from the sale of the property, real or personal, *left at my said wife's death."*

Item 5 provides: *"After her death,* I desire that all property, real and personal, *left by her* under Item 3 of this will shall be sold publicly or privately, as the executor shall think best, and the proceeds thereof shall be *divided among my legal heirs,* subject to the following bequests, to wit:

Item 6. I give to D. A. Bizzell, son of Albert Bizzell, $500 *after my wife's death.*

Item 7. I give to Ann Eliza Cox, daughter of W. E. Cox, $200, to be paid *after my said wife's death.*

Item 8. I give to Selah Church, built by my wife, namely, $200, to be paid *after my wife's death.*

Item 9. I hereby appoint John S. Bizzell executor of this will."

The questions presented are:

(1) As of what time is the class designated by the testator as his "legal heirs" to be ascertained—at the time of his decease or at the decease of his widow?

(2) What was the effect of the widow's failure to dissent? This last

need not be determined, unless we were of opinion that the class was to be ascertained as of the time of the testator's decease.

Although in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described by the testator as his legal heirs, etc., to whom a remainder or executory interest is given by the will, is to be ascertained at the death of the testator, the fact that the property is to be converted into personalty and distributed as such at the death of the first taker is indicative of an intention that the class shall be ascertained at the termination of the life estate. The fact that at the time of the making of the will the person to whom a particular estate was given will presumably be at the testator's death, the sole member of the class to whom the same property is limited, and the use of terms importing plurality in the membership of the class and requiring a *division* among them, while not conclusive of an intent to postpone the ascertaining of the membership of the class, are other indications of such an intention properly to be taken into consideration.

The fact that the widow seems to have been given by implication power to use so much of the principal as she might see fit for her own benefit tends to negative the supposition that she was intended to take under the ultimate limitation. *Hardy v. Gage,* 66 N. H., 552; *Bisson v. R. R.,* 143 N. Y., 125.

Under this will all the property was given to the wife for life (except the devise to Preston Thornton), and there was no devolution over till *after her death.* At that time, the provision that the property should all be sold and, after the payment of the bequests to the orphan asylum, to D. A. Bizzell, to Eliza Ann Cox, and to Selah Church, and the provision that the remainder should be divided among his "legal heirs" by his executor, show not only that the remainder was not devised to the wife nor intended to go to her heirs, but that it was devised and should go to his "legal heirs" in existence after his wife's death. The devise of the remainder speaks of that date.

There was no defect in the will. The property was fully devised and the wife acquiesced therein. The defect is that at the time the division was to be made there were no "legal heirs." If there had been any legal heirs at that time they would have taken the property, and only those who were his legal heirs after his wife's death could have taken, for the provision is that the property should be sold and divided "among the legal heirs" at that time.

If at the testator's death there had been legal heirs other than his wife, they could not have taken if they had predeceased the wife. His "legal heirs" could be those only who were in existence and entitled to receive the legacy at the time of her death. Those only could share in the *divi-*

GRANTHAM *v.* JINNETTE.

*sion* "among my legal heirs," for they alone could answer to the description.

It may well be that the testator expected that he would leave legal heirs by his then wife, who was forty years of age at the time the will was made, or he may have contemplated the possibility of legal heirs by a future marriage.

In *Bowen v. Hackney,* 136 N. C., 187, the will provided for a division of the property between the children of the testator "at the expiration of the life estate," and it is said in the opinion by *Walker, J.,* that "the division is not to be made until the death of the life tenant, and that is the time fixed by the terms of the will when it shall be definitely and finally determined who shall take."

The language of this will brings it within the principle of the decision in *Bowen v. Hackney,* and it follows that the legal heirs of M. H. Bizzell, the testator, are to be determined as of the time of the death of his wife, the devisee of the life estate.

The language of the will in our case is not only sufficient to bring it within the authority of *Bowen v. Hackney,* but is much stronger than in that case in expressing the intention of the testator to annex the time fixed, *i. e.,* the death of the life tenant, to the substance of the gift as a condition precedent, as well as to the time of enjoyment, which *Mr. Justice Walker* says creates a contingent remainder. Though similar to *Bowen v. Hackney,* it is stronger than that case, because there the will did not provide for a sale of the property by the executor and a division of the proceeds, but provided only for the division of the specific property devised to the wife for life.

The contention of the defendants that the legal heirs of testator must be determined at the time of the testator's death is based upon assumption that this "is a devise to E. for life and after her death to the heirs of devisor," and that the will of M. H. Bizzell devised to his legal heirs a remainder which vested at the time of his death, and that the testator's wife being his sole heir at law at that time, the life estate and the remainder merged in her as a fee-simple estate.

At common law the widow was not her husband's heir. She is made so by statute (Revisal, sec. 1556, Rule 8), but the very statute creating the status limits its application to undevised property of the husband. Section 1556 of the Revisal provides that "When any person should die seized of any inheritance or of any right thereto or entitled to any interest therein *not having devised the same* it shall descend" as set forth in the several rules of descent. This language when considered in connection with Rule 8 cannot have the effect of making the wife the husband's heir where the property is *devised* by the husband to his heirs, and certainly not where the wife is devised a life estate with remainder

to the heirs of the husband. The language of the will in this case precludes any intention on the part of the testator to devise to his wife a life estate and also a fee-simple estate in his property. It directs the sale of the property "left by" his wife and to divide the proceeds among his *legal heirs*.

The property to be sold was not simply all of the property which had been devised to the wife for life, but "all property, real and personal, *left by* her under Item 3 of this will." How could the property be "left by her" if the life estate and the fee merged in the wife at the death of the testator, as contended by appellants?

By Item 4 of the will the testator bequeaths $1,000 to the Oxford Orphan Asylum, to be collected from the sales of property, real or personal, "left at my wife's death," again demonstrating the fact that it was not the intention of the testator to devise to his wife the life estate and the remainder. The testator devised to his "heirs at law" a contingent remainder, and that such heirs should be determined at the time of the death of the wife. This is supported by the decisions of this Court and the courts of other States.

In *Latham v. Lumber Co.*, 139 N. C., 9, it is held that a contingent, and not a vested, remainder was created by the provisions of a will devising a life estate to the testator's daughter, "and after her death the said land and negroes are to go to the children of my said daughter and the children of such as are dead."

"Where a testator devises and bequeaths the whole of his estate, real and personal, to his wife during her natural life, except certain amounts to equalize gifts among his children, and then without any express or implied legacy except as contained in the direction to his executor to convert into personalty and distribute, makes the following dispositive clause, viz.: 'After the death of my wife, I desire that the whole of my property, both real and personal, be sold by my executor, and after expenses are paid to distribute equally to my legal heirs,' the rule that a bequest in the form of a direction to pay or to pay and divide at a future period vests immediately, if the payment be postponed for the convenience of the fund or estate, or merely to let in some other interest, does not apply. In such case the direction to the executor to pay or to distribute to the testator's 'legal heirs' confers a contingent interest which does not vest until the period of distribution; and the direction to distribute equally to my legal heirs is equivalent to a direction to make distribution in accordance with the statute providing for descent and distribution." *Barr v. Denny,* 79 Ohio St., 358.

"A devise to the widow for life, and 'at her death' to the testator's 'heirs at law,' creates a contingent remainder, and the estate goes in fee to such persons only as, at the widow's death, answer to the description of 'heirs at law' of the testator." *Forrest v. Porch,* 100 Tenn., 391.

GRANTHAM *v.* JINNETTE.

"A testator bequeathed to his wife 'the use of thirty shares in the Oxford Bank, said shares, at her decease, to be equally divided between his heirs,' and died leaving several children. It was *held* that the reversionary interest of any one of the children in these shares was contingent, and consequently not liable to be attached as his property in the hands of the executor." *Rich v. Waters,* 39 Mass., 563.

"Though the heirs of the testator were determinable at his death, yet the gift to them was not, by the terms of the will, to vest in possession until after the termination of the life estate given to the widow. That was the time fixed for the gift to take effect, and then was the time when the persons would be ascertained, who, coming under the description of heirs of the testator, would be entitled to share with the heirs of his widow in the distribution of the estate. Within that time the number of his heirs might be diminished by death or increased by birth." *Bissen v. R. R.,* 143 N. Y., 130.

In construing a will containing language very similar to that used by the testator in our case, the Supreme Court of New York says: "The widow received a life estate. There was no gift in terms of remainder. But the will contained a direction to sell the land after the termination of the particular estate and divide the proceeds among the objects of the testator's bounty. The rule is well settled that where there is no gift, but by a direction to pay or divide at a future time, the vesting in the beneficiary will not take place until the time arrives. As futurity is annexed to the substance of the gift, none can take except those designated by the will as qualified to take at the time of the division." *Beyer v. Finnen,* 165 N. Y. Supp., 805.

"Where the only words of gift are found in the direction to divide or pay at a future time, the gift is future, not immediate; contingent, not vested." *Hirsch v. Gillespie,* 167 N. Y. Supp., 855; *Matter of Crane,* 164 N. Y., 76.

In *Read v. Fogg,* 60 Me., 479, a father, by deed of warranty, conveyed certain land to his daughter "for her use and benefit during her lifetime, and after her decease to her legal heirs, to them and their heirs and assigns forever," and it was held that the deed created a remainder that was contingent until the daughter's death, when it vested in those who were *then* her heirs at law.

The terms of the will indicate plainly (1) that the wife was restricted as devisee to her life estate, and was to receive nothing more; (2) that *after the wife's death* (which was repeated five times in the will) the property was to be sold, and after the payment of the four legacies named the remainder was not to go to the wife; and certainly the testator did not intend that it should go to her heirs, nor was it left undevised. It was devised to those who should be *his* "legal heirs" *after* her death.

There is a specific devise, clearly and unmistakably made, of the remainder after her death to be "divided among my legal heirs," which could not contemplate that the remainder was undevised. There being no legal heirs at that time, our statute directs that it shall go to the University, as the representative of the general public, who take in default of "legal heirs" in such cases.

This would have been the case if the wife had predeceased the husband, and this could not be changed by the fact that she took and enjoyed the unrestricted life estate which he gave her. At her death the property was devised to his legal heirs existing at that time, and there were none other than as designated by the statute in such cases as this— *i. e.,* the University of North Carolina.

The clear and unmistakable intent of the testator was to dispose of all his property after his wife's death, and that such property should go to those who should be after her death his "legal heirs." He had a right to so direct, and having so directed, the property can go to no others than those who fill such description "after her death." There being none, under the provisions of the State Constitution the judgment should direct that after payment of the legacies the residue of the estate shall be paid over to the trustees of the University of North Carolina, the intervenors.

The sale and division of all the property devised to the wife was specifically directed to take place "after her death." She could not possibly then be his heir. This decision is fully supported by *Mr. Justice Hoke* in *Jenkins v. Lambeth,* 172 N. C., 466, 469.

The judgment will be entered accordingly.

Reversed.

ALLEN, J., dissenting: I think I may assert with confidence that this is the first instance on record in which it has been held that property escheated when the owner left a will undertaking to dispose of it, and when if he had died intestate there was one who could take as his heir.

That the owner intended to dispose of his entire estate appears from the will in the record, and that one survived him, his widow, who could take as heir in case of intestacy, is shown by Rule 8 of Descents, which is as follows: "When any person shall die, leaving none who can claim as heir to him, his widow shall be deemed his heir, and as such shall inherit his estate."

We should not, I submit with deference, reach such a conclusion unless forced to do so by imperative legal rules, as it thwarts the will of the testator and is at variance with the spirit of the statute of descent, which, in this instance, names an heir, and with the law of escheats, which substitutes "the University in the place of the public in regard to

all such real property as fell to the State for want of heirs capable to take." *University v. Gilmour,* 3 N. C., 130.

In determining the rights of the parties, I attach no importance to the words in the will "left at my said wife's death" and "left by her," which are emphasized in the opinion of the Court, because in Item 3 the testator gave to his wife for life personal as well as real property; and knowing that she could not dispose of the land, and that much of the personal property would be consumed, the words naturally refer to the personal property left by her.

The controversy depends on the legal effect to be given to the devise to the "legal heirs" of the testator in the fifth item.

When one "has made a will, the presumption is that he thereby intended to dispose of his entire property," and "the instrument must be construed in reference to that presumption" (*McCallum v. McCallum,* 167 N. C., 311), and in this case we not only have the legal presumption, but the will shows unmistakably the purpose to dispose of all his property.

"The intention must be gathered from the will itself, as read, in view of all the facts and surrounding circumstances" (*Wooten v. Hobbs,* 170 N. C., 214) and "The meaning attributed by him (the testator) to words and phrases, when it appears, must prevail, however different this may be from that ordinarily implied by such words and phrases in other wills or other written instruments. The sole and controlling purpose is to ascertain what the testator whose will may be under consideration intended." *Gray v. West,* 93 N. C., 444.

If there is "no defect in the description of either the person or thing on the face of the instrument it becomes necessary to fit the description to the person or thing; in other words, to identify it. Here, as a matter of course, evidence *dehors* is admissible." *Institute v. Norwood,* 45 N. C., 69, approved *McLeod v. Jones,* 159 N. C., 76.

"Words of every kind, technical as well as others, and particularly when used in last wills, are liable to be varied in their meaning to meet the intention of those who use them; when shown in an authentic manner, the word *heir* may mean some other person than him on whom the law casts the inheritance in a real estate." *Croom v. Herring,* 11 N. C., 395.

It is true in the *Croom case* the word "heir" was used in connection with personal property, and there was other language in the will indicating that it was not used in its technical sense, but the case is authority for the position that *heir* "may mean some other person than him on whom the law casts the inheritance in a real estate."

Applying these principles, it appears that there is no defect on the face of the will, as the term "legal heirs" has a known signification; but

when construed technically there is no one to answer the description and it is presumed the testator intended to dispose of his whole estate and had some one in mind who could take, it is necessary to look at the situation of the testator and the surrounding circumstances in order that the persons called "legal heirs" may be identified, and it was for this purpose the parol evidence was admitted, and it shows that the plaintiffs are the children of Frank and Calve McCullen and are the lineal descendants of the sister of the mother of the testator; that the testator spoke of Frank and Calve McCullen as "first cousins," as "kin to me," as "the nearest kin he had," and said "he had no children and no kinsfolk but the McCullens, and that the McCullens was kin to him and would be his heirs he reckon." Webster defines "reckon" "to conclude, as on an enumeration and balancing of chances; hence to think, suppose"; and as so understood at the time the will was made, the testator concluded, thought, or supposed, the McCullens were his legal heirs, and so devised his property to them. He was thinking of some one, and if not of the McCullens, of whom? since he had declared they were not only his nearest kin, but that he had no other kin, and he thought they were his heirs.

The suggestion that the testator may have had in mind the birth of a child by a second marriage, or by his wife then living, has nothing to support it. Wills speak as of the death of the testator (Revisal, sec. 3140), and the possibility of a second marriage died with him, and it is not within the bounds of probability that he had even a remote idea that the wife with whom he had lived thirty-nine years, and who had given birth to no child, would bear him a child and "legal heir" within nine months after his death.

I therefore think that the verdict of the jury finding that the testator meant by the use of the words "my legal heirs," Frank and Calve McCullen, ought to stand and the judgment be affirmed, and the same conclusion would be reached if the property devised is treated as personalty.

But if this is not so, it does not follow that the University takes by escheat; and, on the contrary, if the plaintiffs have no title, it seems to me, clearly the defendants are the owners as devisees of the widow of the testator.

The Court says "There is no ambiguity. The devise is to a class—my legal heirs; and who they were is a matter of law." Granted, for the purpose of the discussion, and the law says "When any person shall die leaving none who can claim as heir to him, his widow shall be deemed as heir to him, and as such shall inherit his estate." In other words, the opinion of the Court, as I understand it, proceeds upon the idea that the testator had no person in mind when he said "my legal heirs," and that he intended those to take who could answer the roll call,

without regard to person; and if so, the widow must be held to have the title as she was the only legal heir under the statute when the will was made, when the testator died, and when she died. *Everett v. Griffin,* 174 N. C., 107, is an instance of the word "heir" in a will being held to include a widow, and in *Freeman v. Knight,* 37 N. C., 75, the same effect was given to "my legal heirs." The first case is also authority for holding that the proceeds of sale should be dealt with as personalty upon the ground of equitable conversion, but I do not think this affects the rights of the parties as the widow would take the same, whether as heir or distributee.

The phrase "after her death" is no stronger than "at the expiration of my wife's interest," and it was held in *Taylor v. Taylor,* 174 N. C., 538, that in a devise to the wife during widowhood "and at the expiration of my wife's interest in land and property, divide it equally among my living children," that the children who were to take must be ascertained as of the death of the testator, and the same rule would give this property to the widow.

The objection is made that this view cannot prevail because a life estate is given to the widow, and that this demonstrates that the testator did not intend for her to have more, but I respectfully submit that this is answered by the Court when it is held that the testator had no one in mind when he wrote "my legal heirs," and that his purpose was to give the remainder to those upon whom the law cast the inheritance, without regard to person; and if this is true, and the widow falls within the class, she must take.

Again, it is urged that the widow cannot take under the Rule of Descent except when the husband dies "not having devised the same," and that the devise to "my legal heirs" prevents the operation of the rule, but the Court has held that the property has not been devised because there was no one to take. If, however, the widow is not within the term "my legal heirs" and cannot take under the will, there is no one who can, no one has ever been in existence who could, and no one can now come into being to answer the description; and if so, the devise in remainder lapsed and was void, and this upon the death of the testator left the life estate in the widow under the will, and the remainder in fee undisposed of, which the widow inherited under the Rule of Descent before referred to.

There is one other position in favor of the widow, which is amply supported by authority, and which was approved in a unanimous opinion of this Court in *Thompson v. Batts,* 168 N. C., 334, and that is that the devise to "my legal heirs" was void as a remainder and left the reversion in fee in the testator at his death, and if so, it passed to the widow under the Rule of Descent.

Ferne says, page 51: "A limitation to the right heirs of the grantor will continue in himself as a reversion in fee. As where a fine was levied to the use of the wife of the couser for life, remainder to the use of B. in tail, remainder to the use of the right heirs of the couser, it was adjudged that the limitation of the use to the right heirs of the couser was void, for that the old use of the fee continued in him as a reversion."

In *Read and Morpeth v. Evington,* Moor K. B., 284, it was ruled that "If a man seized in fee make a feoffment to the use of A. in tail or for life, remainder to the use of his own right heirs, the land upon the death of A. without issue returns to the feoffer as his ancient reversion, and does not rest in his right heir as a remainder by purchase."

Sir Edward Coke says: "If a man make a gift in tail, or a lease for life, the remainder to his own right heirs, this remainder is void and he hath the reversion in him, for the ancestor during his life beareth in his body (in the judgment of law) all his heirs." Co. Litt., 22.

In Hargrave and Butler's notes (1 Am. Ed., from 19 London Ed. of 1853) one of the notes to this section states the following case, being note 3: "Feoffment to the use of feofee for forty years, remainder to B. in tail, remainder to the right heirs of the feoffor. It is the old reversion, and the feoffor may devise it, for the use returned to the feoffor for want of consideration to retain it in the feoffee till the death of the feoffor." See, also, 2 Wash. Real Property, 692, and *Robinson v. Blankinship,* 92 S. W., 854, 24 A. & E. Enc. L., 398.

Referring to remainders limited to heirs of grantor, *Chief Justice Parson,* in Law Lectures, p. 142, note, says: "A grant to Z. for life, remainder to heirs of grantor, the limitation is not a remainder, but the grantor takes his old reversion." Again, on p. 147, note: "The test by which the applicability of the doctrine may be determined in any particular case is to strike out the *devise to the heir,* and if he would still take the same interest as the will gives him, the devise is void."

"An instance of this sort of remainder is exhibited in a grant to Z. for life, remainder to the heirs of grantor. This limitation, although denominated a remainder in the grant, really is not such. It does not devolve on the heirs of the grantor as purchasers, as it would do if a remainder, but remains in the grantor himself as his old reversion in fee." Minors Institute, Vol. 2, pp. 399-400.

"It is a settled maxim of common law that a person cannot make a conveyance of realty to his own right heirs; and a remainder thus limited is void and will remain in the grantor as his old reversion, and his heirs at his death will take by descent and not by purchase." *Harris v. McLaren,* 30 Miss., 533.

The same principle is recognized in *King v. Scoggin,* 92 N. C., 99,

where the Court says: "It is true, remainders are created by deed or writing, but the estate is sometimes created, so that what is called a remainder is, in effect, only a reversion; as, for instance, when an estate is given to one for life, remainder to the right heirs of the grantor (2 Washburn on Real Property, 692; Burton on Real Property, 51), and this must be the kind of remainder classed with reversions which go to the donor or to him who can make himself heir to him."

"An estate in reversion is the residue of an estate left in the grantor, to commence in possession after the determination of some particular estate granted out by him. It is a present vested estate, although to take effect in possession and profit *in futuro.*" 16 Cyc., 661.

"A reversion descends like the old inheritance." *King v. Scoggins,* 92 N. C., 102.

Under this principle, twice approved unanimously by our Court, so much of the estate as the testator attempted to devise to his legal heirs did not pass by the will, but remained in him as a present vested interest, and upon his death descended to his heirs, and at the time of his death his widow was his only heir.

If this is sound it can make no difference that the devise to "my legal heirs" is *after the death* of the wife, because the devise being to the heirs of the testator it can never take effect as a remainder vested or contingent, and operates only as a reversion, which left in the testator at his death the interest attempted to be devised to his heirs, and as "a reversion descends like the old inheritance" it would belong to the widow, who was the only heir at the death of the testator. In other words, it never has been, nor can be, necessary to ascertain the legal heirs of the testator *after the death* of his wife, because the attempt to devise an interest to his heirs after the life estate of his wife is inoperative and has the legal effect of leaving that interest in the testator at his death, and it would descend to him who was then his heir.

It seems that a sale of the property will not be necessary as all of the parties to the record have elected to treat the property involved in this litigation as land. Why, then, is she not entitled to the property in preference to the University? If it be said the testator did not intend for her to have more than a life estate, it is certain he had no intention of giving his estate to the University, and as the University has abandoned the domain of intent and is relying upon technical legal rules, she may do likewise. I have, therefore, come to the conclusion that the plaintiffs are entitled to recover; and if not that, the defendants are the owners of the land, and that the University has no standing in Court.